824 P.2d 302

**FEDERAL INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**CENTURY FEDERAL SAVINGS
& LOAN ASSOCIATION,**
Defendant–Appellant.

No. 19409.

Supreme Court of New Mexico.

Jan. 10, 1992.

Carpenter, Crout & Olmsted, Michael R. Comeau, Stephen J. Lauer, and Jones, Snead, Wertheim, Rodriguez & Wentworth, James E. Snead, III and Francis J. Mathew, Santa Fe, for defendant-appellant.

Bosson & Canepa, Richard C. Bosson and Brian E. Fitzgerald, Santa Fe, for plaintiff-appellee.

## OPINION

MONTGOMERY, Justice.

This is an insurance coverage dispute between a bank and an insurance company. The bank, Century Federal Savings & Loan Association ("Century") in Santa Fe, New Mexico, was the insured under a "Financial Institutions Insurance Coverage" policy ("the policy") issued by Federal Insurance Company ("Federal"). The dispute centers primarily around the portion of the policy entitled "Mortgage Holder's Insurance," which insured against loss by Century, as a mortgage holder, resulting from damage or destruction to mortgaged property. Century claimed to have suffered such a loss when property on which it held a mortgage was destroyed by fire. Century demanded that Federal assume coverage, and Federal filed suit for a declaratory judgment that the policy did not afford coverage under the facts surrounding the particular loss. The trial court granted Federal's motion for summary judgment and denied Century's cross-motion, construing the policy as affording no coverage. We reverse and remand with instructions to enter judgment in favor of Century.

### I.

The loss in question arose from a fire on January 11, 1989, in which a house under construction by its owner and Century's mortgagor, William Shepherd, was destroyed. Century and Shepherd had entered into a construction loan agreement in May of 1988, under which Century was to lend Shepherd $225,000 for construction of the residence. The agreement required Shepherd to provide builder's risk insurance and include Century as a loss payee. The loan closing, which included Shepherd's execution of the agreement and a mortgage on the property to Century, took place on May 27, 1988, though no actual disbursements of money were made at the time. Contrary to the requirement in the loan agreement, Shepherd failed to provide hazard insurance on the property, and no employee of Century checked to be sure that such insurance was in fact provided. Century thereafter made disbursements of construction loan funds totaling $196,525.

After the fire, Century discovered that Shepherd had failed to provide the insurance required by the loan agreement, and Shepherd discovered that Century had disbursed funds without establishing that insurance was in place. So Shepherd sued Century for breach of contract, negligent disbursement of loan funds, constructive fraud, and breach of fiduciary duty. Century tendered defense of this suit to Federal, and Federal assumed the defense under a reservation of rights. Federal then commenced the present lawsuit, seeking a declaratory judgment that it was not obligated to defend the suit or reimburse Century for the loss of its interest in the mortgaged property.

The policy consisted of several sections providing different forms of insurance: a section insuring Century against loss from damage to its own property; a section, entitled "General Liability Insurance," insuring against various forms of liability to which Century might be exposed; the section referred to above entitled "Mortgage Holder's Insurance"; and other sections not pertinent to this appeal. Included within the Mortgage Holder's Insurance, as we read the policy, is a form entitled "Mortgaged Property Covered Causes of Loss"; the parties disagree over whether this form provides an independent source of coverage or merely defines the causes of loss insured against in the Mortgage Holder's Insurance section.

The principal issue on this appeal relates to the scope of coverage under the Mort-

gage Holder's Insurance section of the policy. That section contains four insuring clauses, three of which—Coverage A, Coverage B, and Coverage D—are at issue in this appeal.[1] The basic insuring agreement preceding these three coverage clauses reads:

We will pay for loss of your mortgage holder's interest resulting from a direct physical loss or damage to mortgaged property by a Covered Cause of Loss. The loss you incur must be due to:[2]

This insuring clause is then completed by a clause defining each of the three coverages, respectively entitled "Mortgage Errors and Omissions" (Coverage A), "Mortgage Impairment" (Coverage B), and "Mortgage Holder's Liability" (Coverage D).

Coverage A (Mortgage Errors and Omissions) is defined as follows:

An accidental error or omission by you or your representative in the operation of your customary procedure in procuring and maintaining valid insurance on mortgaged property when you obtain, retain and/or make premium payments on insurance policies to protect your mortgage holder's interest[.]

Coverage B (Mortgage Impairment) covers:

Failure of the mortgagor to provide valid insurance as described in the mortgage agreement on mortgaged property to protect your mortgage holder's interest. This insurance applies only:

* * * when insurance to protect your mortgage holder's interest is non-existent, invalid, insufficient or uncollectible * * * *

Coverage D (Mortgage Holder's Liability) insures against:

Damages you are legally obligated to pay due to your accidental error or omission in the operation of your customary procedure in procuring and maintaining insurance for the benefit of the mortgagor as required by the mortgage agreement against the Covered Causes of Loss. We will have the right and duty to defend any suit seeking such damages and may investigate and settle any claim or suit at our discretion.

Each of these coverage provisions is qualified by the following "Additional Conditions" appearing shortly after the coverage provisions:

You agree to institute and maintain the following procedures in connection with mortgaged property covered by this insurance. Coverage does not apply on any mortgaged property for which you fail to follow these procedures.

There then follow statements of the five Additional Conditions. The first makes coverage conditional on Century's including in its

mortgage agreement a requirement that at least fire and extended coverage insurance shall [be] maintained by the mortgagor in which you are named as the mortgagee for the amount of the mortgage balance * * * *

The second Additional Condition reads in its entirety:

VERIFY THE MORTGAGOR'S COMPLIANCE.

You will at the mortgage closing when you pay on behalf of the mortgagor, verify the actual existence of valid insurance and record the amount, name of insurance company, policy number, and agent.

---

1. The fourth insuring clause in the Mortgage Holder's Insurance section of the policy is Coverage C, entitled "Real Estate Tax Liability." It provides coverage for "[d]amages for which you are legally liable due to an accidental error or omission by you in paying real estate taxes, as agreed, on behalf of the mortgagor." This provision, while not directly applicable to the issues on this appeal, is relevant, as discussed later in this opinion, because of its reference to an accidental error or omission.

2. The policy defines the term "mortgage holder's interest" as "the amount of the unpaid principal on the * * * mortgage and accrued interest on that amount from the date of default by the mortgagor to the date agreement is reached on the amount of loss * * * * Mortgage holder's interest includes only your interest in mortgaged property * * * [a]s mortgagee * * * *" The policy also defines the term "mortgaged property"; there is no dispute that Shepherd's house fell within the definition.

The remaining three Additional Conditions require Century to notify Federal of a change of escrow procedures; to send its mortgagors, at least annually, written reminders of their obligation to keep the required insurance in force; and to prevent insurance from lapsing by procuring insurance if Century receives information that a mortgagor's insurance is about to terminate.

Federal's primary basis for declining coverage was Century's failure to verify, at the mortgage closing, Shepherd's compliance with the requirement in the loan agreement that he obtain hazard insurance on the property. There is no dispute that Century did not "verify the actual existence of valid insurance[,]" either at the closing or at any time thereafter, when making disbursements.

As noted previously, the trial court granted summary judgment to Federal. Its primary reason for doing so was: "A fair reading of the policy is that Federal agreed to insure Century in the event of a loss because of a loss or lapse of insurance and not in the event a loss occurred because of the failure to obtain insurance in the first place." As for the condition that Century verify Shepherd's compliance with the requirement that he obtain hazard insurance, the court said in its order: "The condition corroborates the court's view that the failure of Century to obtain or confirm insurance coverage on the mortgaged premises was not a risk to be covered by Federal but a fundamental premise for insurance coverage."

On appeal, Century attacks these conclusions, arguing that the verification condition irreconcilably conflicts with the insuring clauses or at least creates such an ambiguity that the policy should be construed in favor of the insured so as to afford coverage for the loss of its "mortgage holder's interest." Century also asserts (though its briefs are not clear whether this is an additional or an alternative contention) that the policy, either through Coverage D quoted above or through the "General Liability" provisions, obligates Federal to defend the Shepherd lawsuit and indemnify Century for any damages ultimately imposed in that lawsuit. We consider first the availability of coverage for Century's loss of its mortgage holder's interest due to the perils described in Coverages A and B of the Mortgage Holder's Insurance section of the policy.

## II.

■ We agree with Century that Coverage B is applicable and affords coverage for Century's loss of its mortgage holder's interest. This conclusion makes it unnecessary to decide the applicability of Coverage A, although, for the reasons stated in connection with Coverage D discussed below, we are inclined to doubt that Coverage A applies.

If one parses the wording in the insuring clause of the Mortgage Holder's Insurance, focusing on Coverage B and relating it to the facts of this case, the clause may be paraphrased as follows: "We will pay for loss of your interest in the mortgage resulting from fire, due to Shepherd's failure to provide valid insurance as described in the loan agreement, when insurance to protect your interest is nonexistent." As so paraphrased, this clause is in irreconcilable conflict with the verification condition, which reads: "You will at the mortgage closing when you pay on behalf of the mortgagor, verify the actual existence of valid insurance * * * *" The insuring clause, in other words, insures against the mortgagor's failure to provide valid insurance and states that the clause applies when hazard insurance is nonexistent, but the condition requires Century to verify that valid insurance actually exists. This is the kind of "irreconcilable conflict," as discussed in *King v. Travelers Insurance Co.*, 84 N.M. 550, 555, 505 P.2d 1226, 1231 (1973), that leads to the conclusion that both clauses cannot stand and that, therefore, the excepting or exclusionary clause must be stricken (*i.e.*, not enforced).

In *King*, we relied heavily on *World Fire & Marine Insurance Co. v. Carolina Mills Distributing Co.*, 169 F.2d 826 (8th Cir. 1948), to support our conclusion that the insuring clause would be given effect de-

spite a conflicting exclusionary clause. The insuring clause in *King* insured against loss caused by accidental discharge of water from a plumbing system, whereas the exclusion provided that the insurer would not be liable for damage due to water below the surface of the ground. We noted that substantial parts of many plumbing systems are installed below the surface of the ground, *id.* at 556, 505 P.2d at 1232, and held that either the clauses were in irreconcilable conflict or they created an ambiguity that would be resolved in favor of the insured. *Id.* at 555, 505 P.2d at 1231. We relied on the *World Fire* case, which recognized the same two alternatives—"that the excepting clause was either in irreconcilable conflict with and repugnant to the insurance clause, or that it must be so construed that its meaning will be harmonized with the insuring clause"— and said that both alternatives would lead to the same result, namely, judgment in favor of the insured. *See id.* (citing *World Fire*, 169 F.2d at 829).

The same two alternatives are presented in this case. We have already described the irreconcilable conflict that arises when the insuring clause, Coverage B, is juxtaposed with the verification condition. To avoid such a conflict, Federal argues that the clauses should be construed in order to harmonize them with one another, as *King* indicates should be done whenever possible. Federal first relies on the construction given the insuring clause by the trial court, arguing that the court was correct in interpreting the clause to mean that there would be coverage for a loss occurring "because of a loss or lapse of insurance," but not for one occurring "because of the failure to obtain insurance in the first place." But this reading flies in the face of the wording in Coverage B that the policy insures against "[f]ailure of the mortgagor to *provide* valid insurance" (emphasis added) and applies when such insurance is

nonexistent. We think it unreasonable to construe this language to mean that the only peril insured against is a loss or lapse in insurance coverage once insurance is initially obtained and that it has no application to the mortgagor's failure to obtain it at the outset.

Federal next attempts to harmonize the insuring clause and the condition by interpreting the word "verify" to mean that the insured is required only to take such steps at the loan closing as are reasonably necessary to ascertain that the mortgagor has the required insurance. If the mortgagee takes such reasonable steps, says Federal, then the possibility that the mortgagor does not have the insurance after all will not mean a loss in coverage.

We find this argument unpersuasive. It rewrites the policy to contain language which is not there: "take reasonable steps to verify insurance" rather than "verify the actual existence of valid insurance." We agree with Century's reply to Federal's argument: The term "verify" requires the insured "to confirm or substantiate * * * to prove to be true * * * [or] conclusively demonstrate * * * " the actual existence of valid insurance. *Webster's Third New International Dictionary* 2543 (13th ed. 1976). Thus, Federal's strained interpretation does not assist in resolving the conflict. Reduced to its essentials, the policy provides on one page that it covers a loss when hazard insurance does not exist and, four pages later, requires the insured to verify that valid insurance actually exists. We believe that this is one of those "extreme situations," as contemplated by *King* and *World Fire*, in which a policy provision excluding liability should be disregarded or stricken because it is repugnant to—*i.e.*, contradicts—a provision extending coverage to certain losses. *See King*, 84 N.M. at 555, 505 P.2d at 1231; *World Fire*, 169 F.2d at 829–30.[3]

---

**3.** *See also Commercial Union Assurance Cos. v. Gollan*, 118 N.H. 744, 747–48, 394 A.2d 839, 842 (1978) (provision which preserved coverage for liability arising from defects in work warranted by insured as workmanlike conflicted with exclusion for property damage to work performed by insured arising out of work or materials furnished in connection therewith; "[A]ny reconciliation of contradictory clauses must result in a policy which reflects the insured's reasonable expectations."); *Standard Mut. Ins. Co. v. General Casualty Cos.*, 171 Ill.App.3d 758, 764, 121 Ill.Dec. 658, 662, 525 N.E.2d 965, 969 (policy provision providing coverage for use of automo-

As in *King* and *World Fire*, it is possible to construe the exclusionary condition so as to harmonize it with the insuring clause, although doing so necessarily results in the conclusion that the condition is ambiguous and so must be construed against the insurer. One such construction is to read the condition literally and apply it when the insured (the mortgagee—Century in this case) "pays" some amount at closing, either a construction loan disbursement or, perhaps, the premium on the hazard insurance contemplated by Coverage B.[4] Since no payments were made at closing, the condition, under this narrow construction, would not apply.

This literal interpretation of the wording of the condition, argued for by Century, does not strike us as plausible; we resist the temptation to adopt it simply because it is consistent with the result we reach in this case. Nothing in the wording of either Coverage B or the condition suggests that the payment at closing contemplated by the condition is payment of an insurance premium, and the concept of "paying" at the closing easily embraces the obligation Century assumed to fund the construction loan by making periodic payments under the loan agreement.

Another possible interpretation of the condition which would harmonize it with the insuring clause is that it is satisfied when the mortgagee establishes the procedures described in the "Additional Conditions" clauses and that failure to follow an established procedure in an individual case would not vitiate coverage in that case. It is undisputed that Century had in fact established a routine procedure for verifying that its mortgagors provided hazard insurance on any property securing a mortgage by the time the mortgage loan was closed and that Century employees simply failed to follow the procedure in this particular instance. This construction seems somewhat reasonable in light of the apparent purpose of all of the insuring clauses to insure against accidental errors and omissions in following the prescribed procedures, although it seems inconsistent with the sentence preceding the five Additional Conditions: "Coverage does not apply on *any* mortgaged property for which you fail to follow these procedures." (Emphasis added.)

The upshot is that there are at least three constructions of the condition that would avoid an "irreconcilable conflict" with the insuring clause in Coverage B. When the language in an insurance policy is susceptible of more than one meaning, it is ambiguous and must be construed in favor of the insured. *Safeco Ins. Co. of Am. v. McKenna*, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977); *Ivy Nelson Grain Co. v. Commercial Union Ins. Co.*, 80 N.M. 224, 226, 453 P.2d 587, 589 (1969). Following this rule, we could construe the condition in the rather strained ways de-

---

bile in Canada conflicted with provision in rental agreement requiring written permission before automobile could be used out of state; "[I]f an insurance contract contains inconsistent or conflicting clauses, the clause which affords greater or more inclusive benefit for the insured will govern."), *appeal denied*, 122 Ill.2d 594, 125 Ill.Dec. 237, 530 N.E.2d 265 (1988); *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So.2d 885, 887 (Fla.Dist.Ct.App.1990) (provision providing coverage for claims of defamation and unfair competition conflicted with provisions excluding same activities; "An insurance policy cannot grant rights in one paragraph and then retract the very same right in another paragraph called an 'exclusion.'"), *review denied*, 589 So.2d 290 (Fla.1991); *Southeast Airmotive Corp. v. United States Fire Ins. Co.*, 78 N.C.App. 418, 420, 337 S.E.2d 167, 169 (1985) (provision providing coverage for damages because of injury to or destruction of property conflicted with exclusion

for loss of or damage to property in custody of insured; "When the coverage provisions of a policy include a particular activity, but that activity is later excluded, the policy is ambiguous, and the apparent conflict between coverage and exclusion must be resolved in favor of the insured."), *review denied*, 316 N.C. 196, 341 S.E.2d 583 (1986).

4. Federal's local agent, who issued the policy on Federal's behalf, testified by deposition that the payment referred to in the condition was the insurance premium and that the condition only applied when Century had the responsibility as mortgagee to pay the premium—*i.e.*, when Century was itself obtaining hazard insurance on the mortgaged property, as contemplated by Coverage A. Century argues that, if this interpretation is correct, the verification condition would not apply to Coverage B.

scribed immediately above and hold that it was inoperative to exclude this loss from coverage under Federal's policy.

We prefer, however, to rest our decision on the ground stated previously—namely, that the condition, read straightforwardly and without a strained interpretation, is simply repugnant to the insuring clause and therefore will not be given effect. As in *Gollan, supra* note 3:

> The question before us is whether the ordinary layman in the position of the insured could reasonably be expected to understand that certain exclusions qualified the policy's grants of coverage
> * * * *
> Insurance policies have long been under attack in this jurisdiction for their confusing language. We recently noted that:
>
> > Although insurers have had over one hundred years to hone their policies into forms that would not ferry the unwary reader on a trip into Wonderland, they regrettably often fully merit the criticism that Chief Justice Doe [deploring the prolixity of complex verbiage in policies, *DeLancey v. Insurance Co.*, 52 N.H. 581 (1873)] levelled at their predecessors. Moreover, as we have recognized, these policies usually are imposed on the consumer on a take-or-leave-it basis * * * * The pretense that the parties had bargained for the resulting contract of insurance is an absurdity.

118 N.H. at 745–46, 394 A.2d at 841 (quoting *Storms v. United States Fidelity & Guar. Co.*, 118 N.H. 427, 429–30, 388 A.2d 578, 580 (1978) (alterations in original)). *See also Pribble v. Aetna Life Ins. Co.*, 84 N.M. 211, 215, 501 P.2d 255, 259 (1972) (recognition is given to insured's reliance on an insurance agent because insurance policies are "complex contracts of adhesion" that are "quite unintelligible to the insured even were he to attempt to read and understand their unfamiliar and technical language and awkward and unclear arrangement" (quoting *Harr v. Allstate Ins. Co.*, 54 N.J. 287, 303, 255 A.2d 208, 217 (1969))).

The understanding of Federal's local agent in Santa Fe, Daniel T. Kelly, Jr., illustrates how "the ordinary layman in the position of the insured" could reasonably be expected to understand that there was coverage for this loss, although Mr. Kelly was not an "ordinary layman" but a professional insurance agent with thirty-five years of experience in the field. He stated, after the fire, that it was his opinion that the loss was covered. He believed that the Mortgage Holder's Insurance was designed to protect Century in case "somebody forgot to obtain insurance" on mortgaged property. Opining that this was "the sort of loss that should have been covered" by the policy, he described Federal's position as "evasive" and the language of the verification condition as "pretty tricky." Once again, reasoning in the *King* case is applicable. There, in holding that the policy was ambiguous, we relied in part on our understanding that the insurer's agents were in doubt as to the applicability of the pertinent provisions of the policy. The conduct of the agents, we said, was "persuasive evidence of the policy's ambiguity." *King*, 84 N.M. at 556, 505 P.2d at 1232.

The placement of Coverage B with three other coverage clauses insuring against an "accidental error or omission" fortifies Kelly's impression that the entire Mortgage Holder's Insurance section of the policy was intended to provide coverage in the event of an error or omission—in Kelly's words, in case "somebody forgot to obtain insurance" on mortgaged property. Century's reasonable expectations as Federal's insured would be eviscerated if the condition were allowed to swallow up the insuring clause—if the insurer were permitted to take away with its left hand what it gave with the right. *See Insurance Co. of N. Am. v. Wylie Corp.*, 105 N.M. 406, 410, 733 P.2d 854, 858 (1987) (giving coverage with right hand and taking away with left is not favored in construing insurance policies).

█ Giving effect to the insured's reasonable expectations, in cases of policy ambiguity, is of course a well-settled approach to construing and applying language in insurance policies. *See, e.g., Sanchez v.*

*Herrera*, 109 N.M. 155, 159–60, 783 P.2d 465, 469–70 (1989) ("The reasonable expectations of the insured * * * provide the criteria for examining an insurance contract on the basis both of the actual words used and of unresolved issues that the insurance company has an obligation to address."); *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 580, 746 P.2d 1109, 1112 (1987) ("The critical analysis * * * should focus primarily on protecting the one for whose benefits premiums have been paid for insurance coverage, and construing the policies liberally in favor of the insured and strictly against the insurers."); *Ivy Nelson*, 80 N.M. at 225, 453 P.2d at 588 ("[W]here there is ambiguity, the test is not what insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.").

Despite this well-settled rule of construction, however, we are not really construing the policy in deciding this case; we are simply refusing to give effect to a provision in the policy that contradicts another provision. Construction of policy language is appropriate when there are two or more meanings to be ascribed to the language (which is thereby deemed ambiguous), but no construction is required when one policy provision is repugnant to another. That is the situation when, rather than creating a specific exception to a broad grant of coverage, an exclusionary clause simply nullifies the grant. In that situation, a court may and indeed should, as the authorities cited earlier in this opinion demonstrate, refuse to apply the clause that deprives the insured of the insurance coverage which the insured reasonably understood was afforded by the policy for which premiums were paid. We hold that situation is present in this case, and we therefore find Coverage B to be applicable and reverse the trial court's conclusion to the contrary.

### III.

The foregoing holding disposes of the basic coverage issue debated by the parties in this case. Somewhat surprisingly, Federal does not raise the possibility that the trial court's summary judgment, if erroneous on the issue of coverage for the loss to Century's "mortgage holder's interest," was nevertheless correct in ruling that Federal was not obligated to assume Century's defense of the Shepherd lawsuit. The obligation to defend is distinct from the obligation to indemnify, *Wylie Corp.*, 105 N.M. at 409, 733 P.2d at 857 (citing *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619, 642 P.2d 604, 605 (1982)), and the former obligation must be found in a policy clause promising to defend against liability, *see id.* (quoting *American Employers' Ins. Co. v. Continental Casualty Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973)). Here, the only sources of Federal's putative duty to defend are Coverage D ("Mortgage Holder's Liability"), quoted above, and the "General Liability Insurance" section of the policy. Federal argues vigorously, and fairly persuasively, that the General Liability provisions were not invoked by the Shepherd lawsuit; but Federal does not even attempt to argue that Coverage D does not apply if either Coverage A or Coverage B does apply.

Federal does maintain, briefly, that Coverage D is not implicated under the facts in this case. It argues, in essence, that Coverage A and Coverage D are congruent and that both apply to the situation in which the mortgagee (Century) obtains insurance, paying the premiums itself, for its own and the mortgagor's benefit. While we are inclined to agree that this is the nature of the coverage contemplated by Coverage A, we see an important distinction between Coverage A and Coverage D: The former refers to the mortgagee's obtaining, retaining, and/or making premium payments on insurance policies; this phrase is absent from the wording of Coverage D.

Thus, it appears probable that the design of the Mortgage Holder's Insurance is something like the following: If an accidental error or omission in the operation of the mortgagee's customary procedure for procuring insurance when the *mortgagee* obtains insurance policies to protect its interest in the mortgaged property results in

**170**

loss to the mortgagee's interest (because of physical loss to the property), Federal will pay for the loss under Coverage A. Conversely, when the loss occurs by reason of the *mortgagor's* failure to provide insurance, Federal will cover the loss under Coverage B. And *in either situation*, if a claim is asserted against the insured for its error or omission and resulting failure to see that insurance for the benefit of the mortgagor is in place, Federal will (under Coverage D) indemnify the insured from liability for the mortgagor's loss and will defend any suit in which the claim is asserted.

This, in any event, seems to be the view of the policy taken by the parties, and we are not inclined to depart from that view when neither party requests us to do so. While we might be inclined to agree with Federal that the wording of Coverage D parallels more closely that in Coverage A than that in Coverage B, we at least would be compelled to conclude that the scope of the insurer's duty to defend under Coverage D is ambiguous; and, following the authorities cited previously concerning construction of ambiguous policy language, we would hold that Coverage D is to be construed in favor of the insured and in this case requires Federal to defend Century against the claims asserted in the Shepherd lawsuit.

It follows that the trial court's summary judgment in favor of Federal was incorrect and that the court should have entered judgment in favor of Century, on the duty to defend as well as on the duty to indemnify Century for loss or damage to its mortgage holder's interest.

The judgment is reversed and the cause remanded with instructions to enter judgment in Century's favor.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.