863 P.2d 1085

**ALLSTATE INSURANCE COMPANY, Plaintiff–Counter–Defendant,**

v.

**Thomas E. STONE and Bertha Stone, Defendants–Counter–Plaintiffs.**

No. 20813.

Supreme Court of New Mexico.

Oct. 28, 1993.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., R.E. Thompson, Lisa Mann Burke, Albuquerque, for plaintiff-counter-defendant.

Janet Santillanes and James T. Roach, Albuquerque, for defendants-counter-plaintiffs.

Sager, Curran, Sturges & Tepper, P.C., Robert L. Scott, Albuquerque, for amicus New Mexico Defense Lawyers Ass'n.

William H. Carpenter and Michael B. Browde, Albuquerque, for amicus New Mexico Trial Lawyers Ass'n.

## OPINION

FROST, Justice.

This matter comes before us by way of certification from the United States District Court for the District of New Mexico pursuant to NMSA 1978, Section 34–2–8 (Repl.Pamp.1990) and SCRA 1986, 12–607 (Repl.Pamp.1992).

### FACTS

Thomas and Bertha Stone insured four vehicles under one multi-vehicle policy with Allstate Insurance Company. The Stones also carried a single-car policy with Allstate that insured a fifth car. They renewed their multi-car policy with Allstate in April 1990. Until April 1990, Allstate had charged separate premiums for uninsured motorist coverage on each of the Stones' four vehicles on that policy. After April 1990, however, Allstate charged one premium for uninsured coverage on their multi-car policy.

In May 1990, Bertha Stone was a passenger in one of the Stones' vehicles when it collided with an underinsured motorist. The tortfeasor had liability coverage of $30,000, which Mrs. Stone claimed was insufficient to cover her damages. Thus, she sought to recover from her underinsured coverage with Allstate.[1] Allstate agreed to pay Stone what it determined was its entire underinsured motorist coverage under her two policies. Allstate stacked the underinsured coverage from the two policies, totaling $50,000, and paid Stone $20,000 after offsetting what she received from the tortfeasor's liability coverage.

The Stones claimed, however, that they should be allowed to stack the underinsured motorist coverage from each of the four vehicles under their multi-car policy. As a result of intra-policy stacking, then, the Stones claimed that Allstate should provide an additional $75,000 in underinsured coverage as their multi-car policy provided $25,000 in underinsured coverage on each of the four vehicles under the policy.

Allstate filed a declaratory judgment action in federal district court against the Stones, seeking a determination that the Stones' multi-car policy properly precluded stacking of underinsured motorist coverage. The parties filed cross-motions for summary judgment, stipulating to the basic facts recited herein. The district court, sua sponte, concluded that the disposition of the cross-motions for summary judgment turned on a question of first impression in New Mexico and was thus appropriate for certification to this Court. We accepted certification.

### ISSUES

The district court certified four questions: (1) Can Allstate Insurance Company

---

[1]. Although the Stones' policy technically provided "uninsured motorist coverage" as defined by the Allstate policy, we have noted that uninsured motorist coverage is equivalent to underinsured motorist coverage. *See Konnick v. Farmers Ins. Co.*, 103 N.M. 112, 114 n. 1, 703 P.2d 889, 891 n. 1 (1985). Thus, we use those terms interchangeably in this opinion.

prohibit the stacking or aggregation of the uninsured and underinsured motorist coverage present in its New Mexico multi-car automobile insurance policies if the policy language purports to prohibit such stacking and if Allstate charges a single premium for the subject coverage?; (2) Does the Allstate Insurance Company automobile insurance policy at issue in this action clearly and unambiguously preclude stacking of uninsured and underinsured motorist coverage?; (3) Does the Allstate Insurance Company charge a single premium for its uninsured and underinsured motorist coverage in New Mexico? If not, how many premiums does Allstate charge for this coverage?; and (4) If Allstate Insurance Company charges an additional premium for multi-car policy uninsured and underinsured motorist coverage, are Thomas and Bertha Stone allowed to stack the policy limits for each insured automobile, or may the insured stack only the same number of policy limits as the number of premiums Allstate actually charges for its uninsured and underinsured motorist coverage?

## DISCUSSION

■ The resolution of this case turns upon an internal inconsistency in the Stones' multi-car policy, which is fatal to Allstate's contention that the policy precludes intra-policy stacking of underinsured motorist coverage. This conclusion answers the second question that the district court certified to this Court. Because the resolution of this issue would appear to be case-dispositive, we do not address the other issues that the district court certified to us. Addressing the other issues certi-

fied to us would result in an advisory opinion. *See Schlieter v. Carlos*, 108 N.M. 507, 508, 775 P.2d 709, 710 (1989) (per curiam) (refusing to answer questions on certification from district court because Court could not resolve those issues on the record presented).

■ Allstate admitted that until it changed its rate structure before the Stones renewed their multi-car policy, intra-policy stacking would have been allowed and would have given the Stones $100,000 in underinsured coverage on their multi-car policy. The Stones argue that when they renewed their policy in April 1990, they expected to continue that same coverage. Allstate claims, however, that upon renewal, it informed all of its policyholders of its new rate structure and of its discontinuation of intra-policy stacking on multi-car policies. In addition, Allstate argues that it unambiguously excluded stacking of uninsured coverages in its policy language appearing under the caption "Limits of Liability." [2]

In another section of the policy, however, Allstate's insurance contract seems to allow intra-policy stacking of uninsured motorist coverages. Under the caption "Combining Limits Of Two Or More Autos Prohibited," the policy states: "The limits available for any other auto covered by this policy will not be added to the coverage for the [auto involved in an accident]," but then notes that this limitation does not apply to uninsured motorist coverage for bodily injury.[3] Thus, the policy on one hand giveth, but on the other hand it taketh away. *See Insurance Co. of N. Am. v. Wylie Corp.*, 105 N.M. 406, 410, 733 P.2d 854, 858 (1987). This is the sort of internal

---

2. The exclusionary language in the policy upon which Allstate relies is:

   The Uninsured Motorists Insurance for Bodily Injury limit stated on the declarations page is the maximum amount payable for this coverage by this policy for any one accident. This means the insuring of more than one auto for other coverages ... will not increase our limit of liability beyond the amount shown in the declarations.

   Regardless of the number of insured autos under this coverage, the specific amount shown in the declarations is the maximum that we will pay under this coverage....

3. The exact policy language is as follows:

   Combining Limits Of Two Or More Autos Prohibited

   \*     \*     \*     \*     \*     \*

   The limits available for any other auto covered by this policy will not be added to the coverage for the involved or chosen auto.
   This provision does not apply to Coverages CM, CW and Section I of Coverage SS.
   Section I of Coverage SS is Uninsured Motorist coverage for bodily injury.

inconsistency or irreconcilable conflict that this Court has routinely construed strictly against the insurer and liberally in favor of the insured. *See Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n,* 113 N.M. 162, 167, 824 P.2d 302, 307 (1992) (when insurance policy susceptible to more than one meaning, ambiguity construed in favor of insured). "Exclusionary clauses in insurance policies are to be narrowly construed with the reasonable expectations of the insured providing the basis for our analysis." *Knowles v. United Servs. Auto. Ass'n,* 113 N.M. 703, 705, 832 P.2d 394, 396 (1992) (citations omitted).

As in *Century Federal,* though, we are not so much construing an ambiguity in the policy in favor of the insured as we are refusing to give effect to the irreconcilable exclusionary language in the policy. *See* 113 N.M. at 169, 824 P.2d at 309 ("no construction is required when one policy provision is repugnant to another"). Thus, when "an exclusionary clause simply nullifies the grant" of coverage, this Court will "refuse to apply the clause that deprives the insured of the insurance coverage which the insured reasonably understood was afforded by the policy." *Id.*

## CONCLUSION

The Stones' renewed multi-car policy did not unambiguously disallow stacking as to uninsured motorist coverage for bodily injury. Actually, the policy could be read to allow intra-policy stacking of uninsured motorist coverage. Thus, the clear and unambiguous language purporting to preclude stacking is irreconcilable with the apparent grant of such coverage. The exclusionary language, therefore, is given no effect, and the Stones are allowed to stack their underinsured motorist coverage on their four vehicles. The second question certified to us is answered in the negative. We decline to answer the others.

**IT IS SO ORDERED.**

BACA and MONTGOMERY, JJ., concur.