1997-NMCA-100

946 P.2d 240

**Peggy MARTINEZ, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,
a Foreign Insurance Corporation,
Defendant–Appellee.**

No. 17561.

Court of Appeals of New Mexico.

Aug. 20, 1997.

Certiorari Denied Sept. 30, 1997.

David Graham, Law Firm of David Graham, Taos, for Plaintiff–Appellant.

Lisa Mann Burke, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Defendant–Appellee.

## OPINION

BOSSON, Judge.

1. Plaintiff Peggy Martinez (Martinez) appeals from an order granting summary judgment for Defendant Allstate Insurance Company (Allstate). She raises three issues on appeal that address stacking of underinsured motorist coverage: (1) whether "per person" policy limits can be multiplied by the number of tortfeasors responsible for her injuries; (2) whether state law will permit tortfeasor liability payments to be offset from her damages as opposed to policy limits; and (3) whether a household exclusion under liability coverage can reduce benefits otherwise due her from underinsured coverage. We decide the first two questions in favor of Allstate but the third in favor of Martinez. Accordingly, we affirm in part, reverse in part, and remand.

## BACKGROUND

2. On June 25, 1990, Martinez was in the front passenger seat while Gilbert Martinez (Gilbert), her husband at the time, was driving her vehicle on a state highway in Colorado. At the same time that the Martinez vehicle began to pass to the left of a vehicle driven by Sandra Horton, Horton began a left-hand turn into her own driveway. The two vehicles collided, injuring Martinez. The Martinez vehicle was insured under an Allstate automobile insurance policy (the policy) which also covered a second vehicle owned by Martinez and Gilbert.

3. Martinez sued Gilbert and Horton in Colorado. Before trial, Martinez settled her claim against Gilbert for $25,000 under the policy's liability coverage, with Allstate's approval. The jury found Horton and Gilbert each fifty percent at fault. After trial Martinez settled with Horton for $50,000, Horton's policy limits, again with Allstate's approval.

4. The Martinez Allstate policy provided uninsured motorist coverage of $50,000 "for each person" and $100,000 "for each accident." Uninsured motorist coverage includes underinsured motorist coverage. *Allstate Ins. Co. v. Stone,* 116 N.M. 464, 465 n. 1, 863 P.2d 1085, 1086 n. 1 (1993); *see* NMSA 1978, § 66–5–301(B) (Repl.Pamp.1994). Allstate and Martinez disagree as to the extent to which the policy provides underinsured coverage to Martinez in these circumstances, and in what amount.

5. With respect to the standard of review, we note that this is an appeal from an order granting a motion for summary judgment based on issues of law without any genuine issues of material fact. "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If the facts are undisputed and only a legal interpretation of the facts remains, summary judgment is the appropriate remedy." *Garrity v. Overland Sheepskin Co.,* 121 N.M. 710, 718, 917 P.2d 1382, 1390 (1996) (quoting *Board of County Comm'rs v. Risk Management Div.,* 120 N.M. 178, 179, 899 P.2d 1132, 1133 (1995)) (internal quotation marks omitted).

## DISCUSSION

I. The per person limits cannot be multiplied by the number of tortfeasors.

6. Allstate concedes that Martinez was entitled to "stack" or aggregate underinsured motorists' coverage for both of her insured vehicles. However, Allstate maintains that the policy limits applicable to Martinez after stacking were $100,000 per person and $200,000 per accident. Martinez objects that the policy limits language of the policy is ambiguous and permits a reasonable interpretation that would allow her to recover more than $100,000. She claims that the policy does not clearly define the meaning of "each person" as it applies to policy limits for purposes of underinsured motorist coverage. She argues that the phrase could be interpreted to mean "each tortfeasor" which would make up to $100,000 available in underinsured motorist coverage with respect to each of the two tortfeasors that Martinez sued.

7. Martinez relies heavily on the differences in the wording between the "limits of liability" provision for underinsured motorist coverage and the "limits of liability" section

relating to liability coverage. The "limits of liability" section relating to liability coverage clearly provides that "[t]he limit stated for each person for bodily injury is our total limit of liability *for damages because of bodily injury sustained by one person in any one occurrence* [.]" (Emphasis added.) The "limits of liability" section relating to uninsured motorist coverage does not contain a phrase with identical wording specifically defining the "per person" coverage as injury sustained by one person:

> Regardless of the number of insured autos under this coverage, the specific amount shown in the declarations is the maximum that we will pay under this coverage for:
>
> 1. "each person" for *damages arising out of* **bodily injury** in any one **motor vehicle** accident, including damages sustained by anyone else as a result of that bodily injury.
> 2. "each accident" for damages arising out of **bodily injury** to two or more persons in any one **motor vehicle** accident. This "each accident" limit is subject to the "each person" limit.

(Emphasis added.) From this lack of symmetry, Martinez draws the conclusion that the policy is ambiguous. She contends the policy limits applicable to her were $100,000 per tortfeasor and $200,000 per accident. Since ambiguities are "construed in favor of the insured," *Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n*, 113 N.M. 162, 167, 824 P.2d 302, 307 (1992), she reasons that she is entitled to $100,000 in underinsured motorist benefits for each underinsured tortfeasor, up to the policy limits of $200,000.

■ 8. An insurance policy is ambiguous if it is " 'reasonably and fairly susceptible of different [interpretations].' " *Sanchez v. Herrera*, 109 N.M. 155, 159, 783 P.2d 465, 469 (1989) (quoting *Levenson v. Mobley*, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987)). Determining whether a contract is ambiguous is a question of law for the court. *Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 711, 845 P.2d 800, 805 (1992). We construe an insurance policy as a whole. *See New Mexico Physicians Mut. Liab. Co. v. LaMure*, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993). The clause granting uninsured mo-

torist coverage reads: "We will pay damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by an insured person."

■ 9. We hold that the policy language is not ambiguous. It provides insurance based on the damages sustained by an insured person, not the number of owners or operators who might be involved. The language of the provision relating to the "each accident" limit in the uninsured motorist section of the policy refers to "bodily injury *to* two or more persons," not bodily injury *caused* by two or more persons. (Emphasis added.) If the Martinez interpretation were adopted, there would be no limit to the insurer's liability when one person was injured by two or more tortfeasors. We will not construe the policy to reach an absurd result. *See Century Fed. Sav. & Loan Ass'n*, 113 N.M. at 167, 824 P.2d at 307. The language in the "limits of liability" section does not conflict with the insuring clause to create an ambiguity.

10. We also consider common usage of "each person" limits. *See Jaramillo v. Providence Wash. Ins. Co.*, 117 N.M. 337, 341, 871 P.2d 1343, 1347 (1994) (extrinsic evidence can be considered in determining whether an ambiguity exists in an insurance policy). In the insurance context, the term "each person" refers to each injured person. *See, e.g., Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 140, 921 P.2d 944, 947 (1996) ("[I]f only one person suffered bodily injury, then the 'each person' limitation applies; if two or more people suffer bodily injury, then the 'each accident' limitation applies."). *Cf.* NMSA 1978, § 66-5-208(A) (Repl.Pamp.1994) (setting $25,000 as the minimum liability insurance required "because of the bodily injury to or death of one person").

■ 11. Martinez attempts to raise a question of fact through her affidavit, asserting that she bought the policy understanding that the "each person" limits referred to the amount she could recover from each person who was an underinsured tortfeasor. But an insured's reasonable expectations regarding coverage must be based on a reasonable

reading of the policy language. *See Century Fed. Sav. & Loan Ass'n,* 113 N.M. at 168–69, 824 P.2d at 307–08. We hold that Martinez has failed to raise an issue of fact regarding the interpretation of "each person" limits.

II. New Mexico law requires tortfeasor liability payments to be offset against Martinez's damages or from her policy limits, whichever is less.

12. Martinez argues that the language of the policy allows her to offset the tortfeasor payments from the total amount of her damages, rather than from policy limits. She relies on the following language in the section of the policy providing for uninsured motorist coverage:

**If There Is Other Insurance**

[W]hen the insured person is legally entitled to recover damages in excess of the other policy limit [applicable to other insurance for the vehicle involved in the accident], we will pay only the amount by which the damages exceed the limit of liability of that policy up to the limit of liability of this policy.

We can assume, without deciding, that the policy language would support Martinez's position. Following that assumption then, hypothetically, if Martinez were damaged in the amount of $200,000, the $75,000 in liability payments would be offset from the amount of her damages, leaving $125,000. If the policy language were enforced, under this hypothetical, Allstate would be required to pay Martinez that amount up to the limits of its underinsured per person liability, or $100,000.

13. Unfortunately for Martinez, however, the result she desires is not possible under New Mexico statutory law as construed by our Supreme Court. Allstate's liability is calculated by the formula contained in Section 66–5–301(B) as explained by our Supreme Court in *Schmick v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 216, 222, 704 P.2d 1092, 1098 (1985), and reaffirmed by the Court a number of times. *See, e.g., Samora v. State Farm Mut. Auto. Ins. Co.,* 119 N.M. 467, 470–71, 892 P.2d 600, 603–04 (1995).

*Schmick* construed Section 66–5–301(B) (Repl.Pamp.1984), stating:

We observe that the Legislature, in defining an underinsured motorist, set the *minimum and maximum* on the amount an insured can collect from his underinsured motorist insurance carrier. *See* § 66–5–301(B). Our statute provides a specific formula by which to compute whether one was underinsured and by what amount. *Id.* The formula is the criterion to be used in determining underinsurance benefits due and *it defines the parameters within which recoveries must stay.* Therefore, an insured collects from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less.

*Schmick,* 103 N.M. at 222, 704 P.2d at 1098 (emphasis added). The relevant language of Section 66–5–301(B) has not changed since *Schmick. Compare* § 66–5–301(B) *with Schmick,* 103 N.M. at 218, 704 P.2d at 1094. The statutory offset of Section 66–5–301(B), referring to "the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident," is thus to be subtracted either from the total of the insured's uninsured motorist coverage or from the insured's damages, whichever method produces the smaller result. *Schmick,* 103 N.M. at 222, 704 P.2d at 1098.

14. Martinez argues she should be free to contract with Allstate to provide that liability payments will be subtracted only from her damages. Unambiguous provisions of an insurance contract are enforced unless they are contrary to public policy. *See LaMure,* 116 N.M. at 95, 860 P.2d at 737. The insurance contract cannot provide less coverage than the statute requires. *See Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 557, 787 P.2d 835, 837 (1990) (insurer's contract with a person may not "be limited except where permitted by statute or regulation"). However, *Schmick,* 103 N.M. at 222, 704 P.2d at 1098 clearly holds that the insurance policy may not provide either *more* or less than Section 66–5–301(B) allows. More than ten

years ago, our Supreme Court invited the legislature to consider amending the statute to obtain the result Martinez wishes. *See Schmick,* 103 N.M. at 224, 704 P.2d at 1100. The legislature has not changed the statute, and when the courts have clearly left it up to the legislature to act, principles of judicial restraint dictate against the court attempting that same result by judicial construction.

15. Martinez argues that *Schmick* was "implicitly overruled" by *State Farm Mutual Automobile Insurance Co. v. Valencia,* 120 N.M. 662, 905 P.2d 202 (Ct.App.), *cert. denied,* 120 N.M. 533, 903 P.2d 844 (1995). *Valencia* held that multiple persons injured in the same accident "are entitled to collect up to the limit of their underinsurance policy to the extent that their damages exceed the amounts that the tort-feasor's insurer has previously paid to them." *Id.* at 665, 905 P.2d at 205. Aside from the settled principle that this Court does not overrule Supreme Court case law, *see Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973), we regard *Valencia* as consistent with *Schmick* in that amounts received from the tortfeasor are to be offset either against the insured's damages or the policy limits of underinsured motorist coverage available to the insured, whichever is less.

16. Allstate agrees that Martinez suffered damages in excess of $100,000. The tortfeasor liability payments of $75,000 should be offset against the policy limits of $100,000, which are less than the damages, leaving $25,000 in underinsured motorist coverage available to Martinez.

III. Allstate may not rely on the household exemption to reduce Martinez's underinsured motorist coverage.

17. Allstate contends that as a result of the household exclusion to liability coverage in the policy, Martinez is not entitled to receive the remaining $25,000 in underinsured motorist benefits. The household exclusion provides:

Allstate will not pay for damages an insured person is legally obligated to pay because of:

. . . .

2. **bodily injury** to any person related to an insured person by blood, marriage or adoption and residing in that person's household, to the extent that the limits of liability for this coverage exceeds the limits of liability required by the New Mexico Financial Responsibility law.

The parties do not dispute that Martinez was married to Gilbert and residing with him at the time of the accident.

18. We do not decide whether the household exclusion is intended by the policy to limit the underinsured motorist benefits that Martinez may recover. Our Supreme Court has clearly held that underinsured benefits for a Class I insured may be limited only by the conditions imposed by statute: (1) the insured must have the legal right to recover damages, and (2) the negligent driver must be underinsured, both of which were established here. *Padilla,* 109 N.M. at 557, 787 P.2d at 837; *see* § 66–5–301; *Mountain States Mut. Cas. Co. v. Martinez,* 115 N.M. 141, 141–42, 848 P.2d 527, 527–28 (1993). An insurance carrier may not impose any other limitations upon a Class I insured's receipt of underinsured benefits, including the household exclusion at issue here. *See Padilla,* 109 N.M. at 557–60, 787 P.2d at 837–40. Class I insureds are essentially the named insureds and their families, as opposed to mere passengers who are denominated as Class II insureds. *Martinez,* 115 N.M. at 142, 848 P.2d at 528. A Class II insured's coverage may be limited by contract in ways that a Class I insured's coverage may not. *Id.* There is no question that Martinez was a Class I insured, and therefore under existing authority her underinsured coverage may only be limited by the conditions established by statute and not by additional conditions under contract such as the household exclusion. Accordingly, we hold that Allstate may not apply the household exemption to deny Martinez the remaining $25,000 due her in underinsurance benefits.

CONCLUSION

19. We affirm the trial court's grant of Allstate's motion for summary judgment that the tortfeasors' liability payments totaling

$75,000 should be offset against Martinez's stacked underinsured motorist coverage of $100,000. We reverse that portion of the summary judgment that eliminated Martinez's remaining underinsured motorist coverage of $25,000 on the basis of the household exemption. We remand this cause to the trial court for further proceedings in accordance with this opinion.

20. **IT IS SO ORDERED.**

HARTZ, C.J., and FLORES, J., concur.

HARTZ, Chief Judge, concurring.

(21) I join fully in Judge Bosson's opinion. It properly follows precedent established by the New Mexico Supreme Court. I confess, however, that I am unable to read New Mexico's statutes as compelling the results reached in Sections II and III of our opinion. If we were not bound by Supreme Court precedent, I would agree with the losing party on each of those issues that the issues should be resolved as a matter of contract interpretation.