278 F.3d 1102
 ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
INDEPENDENT APPLIANCE & REFRIGERATION SERVICE, INC.; Michael Meister, Defendants-Appellants,
New Mexico Trial Lawyers Association;
New Mexico Defense Lawyers Association, Amici Curiae.
 No. 01-2117.
 United States Court of Appeals, Tenth Circuit.
 January 3, 2002.
 
 Lisa Mann, (Jennifer A. Noya with her on the brief), Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, for Plaintiff-Appellee.
 Geoffrey R. Romero, Albuquerque, NM, for Defendant-Appellant.
 Janet Santillanes, Albuquerque, NM, filed an amicus curiae brief for New Mexico Trial Lawyers Association.
 Rudolph A. Lucero, Miller, Stratvert & Torgerson, P.A., Albuquerque, NM, filed an amicus curiae brief for New Mexico Defense Lawyers Association.
 Before SEYMOUR, McKAY, and MURPHY, Circuit Judges.
 MURPHY, Circuit Judge.
 
 I. INTRODUCTION
 
 1
 The Defendants, Michael Meister and Independent Appliance & Refrigeration Services, Inc. appeal the Magistrate Judge's grant of summary judgment to the Plaintiff, Allstate Insurance Company ("Allstate"). The district court ruled that Meister's personal automobile insurance policy, issued by Allstate, unambiguously precluded stacking of more than two uninsured motorist coverages.[1] This court has jurisdiction under 28 U.S.C. § 1291 and affirms.
 
 II. FACTS
 
 2
 Meister was injured in an automobile accident with an underinsured motorist on April 13, 1998. Allstate filed this action in the District Court for the District of New Mexico seeking a declaratory judgment limiting its coverage. Meister held several Allstate Insurance policies. The only policy relevant to this appeal is Policy No. 038351893, a personal automobile insurance policy. Meister held the policy at least as early as February 6, 1990.
 
 
 3
 Allstate changed Meister's policy several times from 1990 to the time of the accident in 1998. In 1990, Allstate decided to end the practice of "stacking" uninsured motorist coverages.[2] Accordingly, it sent a "Coverage Update" to all of its insureds, including Meister, stating that stacking would no longer be allowed and that henceforth only one premium would be charged for uninsured motorist coverage, regardless of the number of vehicles insured under the policy. Allstate's attempt to preclude stacking entirely was voided by the New Mexico Supreme Court in Allstate Insurance Co. v. Stone because of contradictory language in the policy indicating that stacking may be available. 116 N.M. 464, 863 P.2d 1085, 1087-88 (1993). Allstate revised its policy language in 1994 to eliminate the ambiguity and sent endorsement AU2207-1 with "Important Notice" X5045 to its insureds. Both stated that stacking was not allowed. Finally, Allstate amended the policy in 1997 with endorsement AU2207-2, which amended the "Limits of Liability" provision under the "Bodily Injury Caused by Uninsured Motorists" provision of the policy to allow stacking of two "but no more than two" coverages. This endorsement also contained seemingly contradictory language indicating that no stacking was allowed:
 
 
 4
 [i]f you have two or more autos insured in your name and one of these autos is involved in an accident, only the coverage limits shown on the declarations page for that auto will apply ....
 
 
 5
 The limits available for any other auto covered by this policy will not be added to the coverage for the involved or chosen auto.
 
 
 6
 Both Meister and Allstate moved for summary judgment. Allstate argued that the language in endorsement AU2207-2 limited stacking of uninsured motorist coverage to two coverages. Accordingly, its liability was limited to $50,000, twice the $25,000 policy limit for uninsured motorists coverage. Meister argued that the policy was ambiguous and that he should be allowed to stack four coverages, one for each vehicle insured under the policy.
 
 
 7
 The district court granted Allstate's motion for summary judgment and denied Meister's, concluding that Allstate unambiguously limited stacking and complied with all requirements imposed by New Mexico law. Meister filed a motion for reconsideration, or in the alternative, for clarification, which the district court construed as a Rule 59(e) motion to amend or alter the judgment. The district court denied the motion.
 
 III. STANDARD OF REVIEW AND APPLICABLE LAW
 
 8
 On appeal of a summary judgment, this court reviews the district court's decision de novo and applies the same legal standard used by the district court under Federal Rule of Civil Procedure 56. Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124 (10th Cir.2000). Summary judgment is appropriate if the pleadings, discovery, and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Since there are no disputed issues of fact, this court's task is to determine whether the lower court correctly applied the substantive law. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir.1996). This is a diversity action. Accordingly, this court applies the substantive law of the forum state. Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir.1994). New Mexico law controls this dispute.
 
 IV. DISCUSSION
 
 9
 Meister contends that under New Mexico law, his personal auto insurance policy was ambiguous on the extent of stacking allowed. He depends heavily on Rodriguez v. Windsor Insurance Co., 118 N.M. 127, 879 P.2d 759 (1994). In Rodriguez, the New Mexico Supreme Court held that, given the strong judicial policy favoring stacking, insurers could only prohibit the practice with a policy containing a "truly unambiguous antistacking clause." Id. at 759, 765. Rodriguez set out three requirements to preclude stacking entirely.
 
 
 10
 [The clause must] plainly notif[y] the insured [1] that only one premium has been charged for one insurance coverage, [2] that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and [3] that the insured should bear this feature in mind when purchasing insurance.
 
 
 11
 Id. at 765. Meister contends that his Allstate policy violates all three requirements.
 
 
 12
 Meister first argues that his policy does not notify him that only one premium is charged for one insurance coverage. He argues such notification is impossible because the policy clearly allows for stacking of two coverages, not one, and because the premium paid is higher than if he only had one covered vehicle. Additionally, Meister argues that an insured could read the definition of "Insured Auto" and reasonably conclude that he was paying a premium for uninsured motorists coverage on a per vehicle basis.[3]
 
 
 13
 In considering the number of premiums paid, this court must analyze the "insured's reasonable expectations." Id. at 762. Unlike the policy layout in Rodriguez, the Allstate policy lists the premium paid for "Uninsured Motorists Insurance for Bodily Injury" coverage as a single premium.[4] Additionally, the first paragraph of the policy states "only one premium will be shown for ... Section I of Coverage SS [uninsured motorists coverage for bodily injury] regardless of the number of autos insured." Furthermore, Allstate sent out a "Coverage Update" to all of its insureds when it did away with per car premiums for uninsured motorists coverage in 1990. This Update told the insureds that Allstate was abandoning its previous practice of charging a premium for each car, and that "[n]ow, when you purchase [uninsured motorists coverage] one premium will be charged to cover all motor vehicles insured under your policy." Thus, a reasonable insured could not conclude that he was paying separate premiums on a per vehicle basis.
 
 
 14
 Allstate concedes that it charges a higher single premium for uninsured motorists coverage when two vehicles are insured, though the affidavit of an Allstate senior actuarial assistant asserts that there is no further premium increase when three or more vehicles are insured. Meister paid roughly the equivalent of two premiums and was able to stack two coverages. Allstate did not charge him any additional premium to insure a third or fourth car, and it would contravene New Mexico public policy, as articulated by Rodriguez, to allow him to collect additional coverages for which he did not pay and could not expect. See Rodriguez, 879 P.2d at 761 (noting that stacking is permitted "on the rationale that separate premiums for separate coverages entitle the insured to the benefit of what he or she has paid for") (emphasis added, quotation omitted); see also Shope v. State Farm Ins. Co., 122 N.M. 398, 925 P.2d 515, 517 (1996) (holding that the New Mexico policy against antistacking "focused on the expectations of the insured"). Meister's Allstate policy thus satisfies the first Rodriguez requirement.
 
 
 15
 Meister's second argument is that the Allstate policy did not inform him that stacking was not allowed and thus runs afoul of Rodriguez's second requirement. In endorsement AU2207-2, the policy informs its insured that no more than two coverages may be stacked. Meister's argument is essentially that because the policy does not inform him that he cannot stack and indeed tells him that he can stack two coverages, Rodriguez requires unlimited stacking. Meister's position would provide a windfall to insureds. It is also a distortion of New Mexico's stacking jurisprudence. Rodriguez makes clear that to do away with stacking could upset the reasonable expectations of insureds, who may conclude from ambiguous policy language that they paid premiums for multiple coverages. See 879 P.2d at 764; see also Jimenez v. Found. Reserve Ins. Co., 107 N.M. 322, 757 P.2d 792, 794 (1988) ("The legislature intended that an injured person be compensated to the extent of insurance liability coverage purchased for his or her benefit."). When the policy is clear that stacking of only two coverages is allowed,[5] and when the premium is not greater than twice the premium for a single vehicle, it is difficult to argue the reasonable expectation of an insured was that he could stack all of his coverages.
 
 
 16
 Meister's third argument is that the Allstate policy violates the third requirement of Rodriguez: the insurer must tell the insured to bear the antistacking feature in mind when purchasing insurance. Meister held his personal auto policy with Allstate since at least early 1990. Sometime in 1990, Allstate sent to all of its insureds, including Meister, a "Coverage Update." That Update informed Meister that stacking would no longer be allowed under the policy and that his potential recovery in case of an accident with an uninsured motorist could be decreased. Allstate also informed Meister that he may want to increase his coverage amounts by paying a higher premium. This Coverage Update more than adequately informed Meister that his policy no longer allowed stacking and his recovery could be lower. It gave him the option of purchasing additional insurance to offset this decreased recovery. Rodriguez's third requirement was thus satisfied.[6]
 
 
 17
 Because the district court properly interpreted and applied New Mexico law to the undisputed facts, we need not address Meister's argument that it was error to deny his motion for reconsideration, or in the alternative, for clarification.
 
 V. CONCLUSION
 
 18
 The judgment of the District court for the District Court of New Mexico is AFFIRMED.[7]
 
 
 
 Notes:
 
 
 [1]
 The Allstate policy provides "Uninsured Motorists Insurance Coverage." The policy defines the term "uninsured auto" to mean a vehicle with no insurance and a vehicle that is underinsured, i.e. has a policy "which doesn't provide at least the minimum financial security requirements specified in the financial responsibility law of New Mexico." This opinion will similarly employ the word "uninsured" to mean both uninsured and underinsured
 
 
 [2]
 "Stacking" in this context occurs when an individual collects from the insurer under multiple coveragesSee generally Robert E. Keeton & Alan I. Widiss, Insurance Law § 5.9(b) (practitioner's ed.1988).
 
 
 [3]
 The policy provides (italics added):
 Insured auto means a motor vehicle:
 
 
 [1]
 you own. This includes any auto you purchase as a replacement for the owned motor vehicle. However, any additional motor vehicle you acquire during the policy period will be covered for 30 days after you become the owner only if Allstate or one of its affiliates insure all other motor vehicles you ownand you pay any additional premium.
 
 
 [4]
 InRodriguez v. Windsor Insurance Co., three vehicles were insured. 118 N.M. 127, 879 P.2d 759, 760 (1994). Each vehicle was given a number and that number was a column heading on the declarations page of the policy. One $131 premium for uninsured motorists coverage was listed under the Vehicle 1 column, but the term "INCL" was listed in the uninsured motorists coverage row for the Vehicle 2 and 3 columns. Id. The New Mexico Supreme Court concluded that the arrangement could lead a reasonable insured to conclude that the $131 figure included separate premiums charged for vehicles 2 and 3. Id. at 764.
 
 
 [5]
 Policy endorsement AU2207-2, sent in 1997, is unequivocal. In Part III of the endorsement, the "Limits of Liability" provision of Part 5 "Uninsured Motorists Insurance (Coverage SS)" of the policy is amended to read (italics added):
 The Uninsured Motorists Insurance for Bodily Injury limit stated on the declarations page is the maximum amount payable for this coverage by this policy for any one accident, except when two or more vehicles are insured under this policy, we will stack or aggregate up to two, but no more than two, uninsured motorist insurance for bodily injury coverages under this policy. This means the insuring of more than one auto for other coverages or under Section II of this coverage will not increase our limit of liability beyond the amount shown in the declarations, except when two or more vehicles are insured under this policy, we will stack or aggregate up to two, but no more than two, Uninsured Motorist Insurance for Bodily Injury coverages under this policy.
 Meister argues the endorsement itself is ambiguous, because an earlier paragraph indicates that coverage cannot be stacked. Part I.B. of the endorsement amends the "Combining Limits Of Two Or More Autos Prohibited" portion of the policy to read:
 If you have two or more autos insured in your name and one of these autos is involved in an accident, only the coverage limits shown on the declarations page for that auto will apply.
 . . . .
 The limits available for any other auto covered by this policy will not be added to the coverage for the involved or chosen auto.
 Assuming that the purported conflict in the endorsement creates an ambiguity, a reviewing court's task is to give "effect to the insured's reasonable expectations." Fed. Ins. Co. v. Century Fed. Sav. & Loan Ass'n, 113 N.M. 162, 824 P.2d 302, 308 (1992). With one portion of the endorsement precluding stacking entirely and another allowing stacking of two but no more than two coverages, the insured's reasonable expectation could be at most that he could stack two, but no more than two coverages, not that he could stack all of his coverages.
 
 
 [6]
 Meister argues that the 1990 Coverage Update was not a part of the 1997 policy issued to Meister that allowed limited stacking. This court agrees with the district court that nothing inRodriguez requires that notice of the consequences flowing from the limitation of stacking be included in the policy. Meister, having a continuous relationship with Allstate, was put on notice in 1990 that the antistacking changes in his policy could mean a lower recovery. Allstate was not required to warn Meister in every policy renewal.
 
 
 [7]
 In light of this court's resolution of the appeal, the appellant's motion to certify to the New Mexico Supreme Court is DENIEDSee Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1231 (10th Cir.2001) (noting motions for certification are not compelled and generally denied when party seeking certification only does so after receiving an adverse decision in the district court).