918 P.2d 728

**MOUNTAIN STATES MUTUAL CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**Orlando VIGIL, Defendant–Appellant.**

**No. 17240.**

Court of Appeals of New Mexico.

May 21, 1996.

Robert E. Sabin, Bryan D. Evans, Atwood, Malone, Turner & Sabin, Roswell, NM, for Appellee.

Kelly Mack Cassels, Clay H. Paulos, Sanders, Bruin, Coll & Worley, P.A., Roswell, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

1. This appeal involves a dispute between Mountain States Mutual Casualty Company, a provider of underinsured motorist coverage (Insurer), and Orlando Vigil (Vigil), an employee injured on the job. The district court entered a declaratory judgment granting Insurer a credit against any underinsured motorist (UIM) amounts Insurer may owe to Vigil. Vigil appeals. The facts of the case are undisputed and the law, as we view it, is straightforward. Therefore, this case is appropriately decided on the summary calen-

dar. *See Garrison v. Safeway Stores,* 102 N.M. 179, 180, 692 P.2d 1328, 1329 (Ct.App.), *cert denied,* 102 N.M. 225, 693 P.2d 591 (1984). We reverse.

### FACTS

2. Vigil was injured in a motor vehicle collision while in the course and scope of his employment. The accident was caused by a third-party tortfeasor. At the time of the accident, Vigil's employer provided workers' compensation insurance through Fireman's Fund, and UIM coverage through Insurer. As a result of the collision, Vigil received a certain amount of workers' compensation benefits and medical expenses from Fireman's Fund. Vigil settled his claim against the third-party tortfeasor for $50,000, the limits of the tortfeasor's liability coverage. He also settled Fireman's Fund's reimbursement claim for past and future workers' compensation benefits. This settlement resolved all claims that Vigil's employer or Fireman's Fund had against the funds received from the third-party tortfeasor and any potential recovery from Insurer. It also resolved all claims Vigil had against his employer or Fireman's Fund for future workers' compensation benefits (except for future medical expenses, which were left open as required by the law in effect at the time of the injury).

3. For reasons that have not been revealed in this lawsuit, the settlement between Vigil and Fireman's Fund did not require repayment of the entire dollar amount of medical expenses and compensation benefits paid to Vigil by Fireman's Fund. Fireman's Fund had paid a total of $18,946.91 in benefits and expenses, but settled its reimbursement claim for a total of $6,000. In addition, Vigil and Fireman's Fund agreed to settle Vigil's claim for future compensation payments for a total of $4,039.89. Accordingly, Vigil received a total of $22,986.80 in benefits and expenses from Fireman's Fund and repaid Fireman's Fund $6,000, leaving $16,986.80 unreimbursed.

4. Following the settlements with Fireman's Fund and the tortfeasor, Vigil set out to recover under the UIM policy for damages he suffered in excess of the $50,000 received from the tortfeasor. He demanded arbitration in accordance with Insurer's UIM policy

with Vigil's employer. Insurer responded by filing a declaratory judgment action in district court, requesting judgment to the effect that Vigil was not entitled to any proceeds from the UIM policy. In the alternative, Insurer asked for an offset for the net workers' compensation benefits and medical expenses paid to Vigil above those repaid to Fireman's Fund under the settlement between Vigil and Fireman's Fund. That is, Insurer wanted credit for the amount of workers' compensation benefits Vigil was not required to reimburse to Fireman's Fund by reason of their settlement. The district court issued a judgment granting Insurer the requested credit. The court, in fact, increased the credit to $21,026.49, apparently because of an erroneous "double-counting" of the $4,039.89 payment for future compensation benefits. Vigil appeals, claiming no credit at all should have been allowed.

### DISCUSSION

5. Insurer's argument is based on its interpretation of NMSA 1978, Section 52–5–17(C) (Repl.Pamp.1991) (effective Jan. 1, 1991). This section states in pertinent part:

> The worker or his legal representative may retain any compensation due under the uninsured motorist coverage provided in Section 66–5–301 NMSA 1978 if the worker paid the premium for that coverage. If the employer paid the premium, the worker or his legal representative may not retain any compensation due under Section 66–5–301 NMSA 1978, and that amount shall be due to the employer.

Despite the fact that this provision is contained in the Act in a section describing an employer's reimbursement rights, and even though the statute provides for the payment of uninsured motorist proceeds to either the worker or the employer, Insurer contends that the actual purpose of the provision is to prevent double recovery to a worker, and that the provision entitles Insurer to a reduction in the amount it owes under the UIM policy. We disagree, both based on the plain wording of the statute and for the reasons set forth below.

■ 6. Prior to the recent amendment of the statutory provision relied on by Insurer,

the offset granted to Insurer in this case had been expressly forbidden by our Supreme Court. *See Continental Ins. Co. v. Fahey,* 106 N.M. 603, 605–06, 747 P.2d 249, 251–52 (1987) (uninsured motorist insurer was not entitled to offset for workers' compensation benefits paid to employee). The provision as amended has been interpreted in *Draper v. Mountain States Mutual Casualty Co.,* 116 N.M. 775, 867 P.2d 1157 (1994). The *Draper* court held that Section 52–5–17(C) is a reimbursement statute. The purpose of the provision is to ensure that an employer that pays premiums for both workers' compensation coverage and uninsured or underinsured motorist coverage will be entitled to reimbursement, from the uninsured motorist policy proceeds, for any workers' compensation benefits or medical expenses paid to the worker. *Id.* at 778, 867 P.2d at 1160. The court's holding was summed up as follows: "the employer's liability for workers' compensation is reduced by the net amount an employee receives in uninsured motorist benefits under coverage provided by the employer." *Id.* The *Draper* case makes it clear that the purpose of Section 52–5–17(C) is to ensure the employer a share of the recovery from UIM proceeds when the employer has provided the UIM coverage.

7. While *Draper* does refer to the prevention of double recovery, in language relied on heavily by Insurer, this language must be viewed in context. The double recovery to which the Supreme Court was referring was a worker's possible double recovery *from his employer. Id.* (emphasizing that the statute reduces the employer's liability for workers' compensation by the net amount an employee receives in uninsured motorist coverage). Under the factual scenario described in *Draper,* the employer (and, through the employer, employer's workers' compensation insurer) is entitled to a credit for any UIM proceeds payable.

■ 8. The converse, however, is not true. Nothing in Section 52–5–17(C) allows the reverse offset claimed by Insurer in this case. In fact, the specific language of the statute, to the effect that UIM amounts will be payable to the employer or to the worker, establishes that the intended beneficiary of the statute is the employer or the worker, not the UIM provider. The only question under the statute is whether the worker or the employer will receive the proceeds of the UIM policy. Insurer's obligation to pay UIM benefits is not affected by Section 52–5–17(C).

■ 9. Put another way, there are two discrete relationships involved in this case. Insurer owes Vigil any amount of UIM proceeds that Vigil may be able to establish in the arbitration, up to the policy limits. Vigil, on the other hand, owed Fireman's Fund an amount necessary to appropriately reimburse it for the workers' compensation benefits it paid. Vigil and Fireman's Fund were free to settle their respective claims against each other in any way they saw fit, without affecting the claims between Vigil and Insurer. Here Insurer was allowed to attack the settlement between Vigil and Fireman's Fund as too low, and then Insurer (rather than Vigil's employer) was given the difference between what Fireman's Fund "should" have received in the settlement and what it did receive. This result does not comport with the legislature's purpose in enacting Section 52–5–17(C).

10. Insurer contends that Section 52–5–17 was amended to add subsection (C) in order to legislatively overturn the *Fahey* decision, which held that an Insurer who provides both UIM and workers' compensation coverage to an employer is not entitled to an offset against any amounts payable under the UIM policy for workers' compensation amounts paid to an injured employee. 106 N.M. at 606–07, 747 P.2d at 252–53. According to Insurer, giving effect to this purpose requires that Insurer be granted the offset it seeks. We disagree, however, with Insurer's premise. We believe that the amendment of this section was aimed at other language in the *Fahey* decision.

11. In the course of deciding *Fahey,* the court included language that distinguished UIM proceeds from a normal tort recovery. The opinion could be read to suggest that an employer who paid for UIM coverage could not offset its liability for workers' compensation by any amounts paid under the UIM policy. 106 N.M. at 606, 747 P.2d at 252.

The court specifically cited to *Gantt v. L & G Air Conditioning,* 101 N.M. 208, 680 P.2d 348 (Ct.App.1983), *cert. quashed,* 101 N.M. 189, 679 P.2d 1287 (1984), which held that a recovery of UIM proceeds, unlike a recovery from a third-party tortfeasor, has no effect on a worker's right to compensation benefits and medical expenses. 106 N.M. at 606, 747 P.2d at 252. After *Gantt* and *Fahey,* therefore, it could have been successfully argued that an injured worker was entitled to workers' compensation benefits and expenses without an offset to employer for the proceeds of the employer's UIM policy. The legislature's enactment of Section 52–5–17(C) ended that possibility. It did not, however, grant an added benefit to UIM insurers that did not exist before.

12. In this regard, the potential for "double recovery" is a false issue. It would be inappropriate to speculate as to why Fireman's Fund settled for less than the full amount it paid. The reason for the settlement does not matter, nor does the amount of the settlement. The settlement is presumed to be a full and fair settlement of all claims Fireman's Fund may have to the UIM proceeds and to the recovery from the third-party tortfeasor. As such, it represents employer's exercise of its rights under Section 52–5–17(C), and does not implicate or affect Insurer's responsibility under the UIM policy. We note Insurer has not offered to pay the offset it seeks to Vigil's employer or to Fireman's Fund.

13. We hold that Insurer remains liable for the full amount of UIM coverage to the extent Vigil proves his damages in the arbitration. Accordingly, we reverse the declaratory judgment entered by the district court.

14. **IT IS SO ORDERED.**

PICKARD and WECHSLER, JJ., concur.