2003-NMCA-040

63 P.3d 517

Darlene FICKBOHM, Plaintiff–Appellant,

v.

ST. PAUL INSURANCE COMPANY,
Defendant–Appellee,

and

Jean Jarvis, Plaintiff–Appellant,

v.

St. Paul Insurance Company,
Defendant–Appellee.

Nos. 22,344, 22,343.

Court of Appeals of New Mexico.

Dec. 23, 2002.

Certiorari Granted, No. 27,872,
Feb. 11, 2003.

Paul F. Abrams, Abrams & Barliant, P.C., Santa Fe, for Appellants.

Steven C. Henry, Steven C. Henry, LLC, Albuquerque, for Appellees.

*OPINION*

BUSTAMANTE, Judge.

{1} Plaintiffs Darlene Fickbohm and Jean Jarvis (referred to jointly as Plaintiffs or individually as Fickbohm and Jarvis) appeal from the district court's order permitting St. Paul Insurance Company (St.Paul) to offset from Plaintiffs' uninsured/underinsured motorist coverage (UM/UIM) arbitration awards the amount it paid to Plaintiffs under the medical payments (medpay) portion of their respective automobile insurance policies. Although Plaintiffs' briefs are framed as raising ten and nine issues respectively, they in fact raise multiple arguments with regard to one issue: that St. Paul should not have been allowed to offset from their UM and UM/UIM arbitration awards the amounts it had previously paid Plaintiffs under their medpay coverage. We consolidate the appeals for purposes of this opinion and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2} The material facts in this case are undisputed. In 1995 Fickbohm and Jarvis were each injured in separate collisions with automobiles whose owners and drivers were underinsured (Fickbohm) or uninsured (Jarvis). At the time of the accidents Fickbohm was the named insured (Class I insured) on an automobile insurance policy with St. Paul, and Jarvis was a covered insured (Class II insured) on an insurance policy with St. Paul issued to her employers. Fickbohm's policy included UM/UIM coverage of $100,000 and medpay coverage of $5000. Jarvis' policy included UM/UIM coverage of $250,000 and medpay coverage of $5000. In each instance separate premiums were paid for the UM/UIM and the medpay coverage.

{3} As a result of Plaintiffs' injuries in their respective accidents, St. Paul initially paid $5000 under each Plaintiff's medpay coverage. Fickbohm also received $25,000 from the tortfeasor, which represented the limits of his policy. St. Paul had earlier given Fickbohm written permission to accept the award and waived subrogation against the tortfeasor on the medical payments claim. After failed attempts to settle their claims

against St. Paul, each Plaintiff initiated arbitration proceedings of their UM/UIM claims. Each Plaintiff received an arbitration award (Fickbohm $95,000 and Jarvis $80,000). After deducting the amount paid by the underinsured motorist, the amount due from St. Paul pursuant to Fickbohm's UM/UIM coverage was $70,000. In each case, when St. Paul paid the UM/UIM arbitration award it deducted the $5000 it had previously paid under medpay coverage. Thus, St. Paul paid Fickbohm $65,000 and Jarvis $75,000.

{4} After receiving St. Paul's payment, less the medpay offset, Fickbohm and Jarvis filed separate complaints seeking confirmation of the full award. St. Paul filed a motion to dismiss or, alternatively, motion for summary judgment, in each case, arguing that it had fully paid the arbitration award and was entitled to offset medpay payments from the UM/UIM awards. With the parties' consent, the district court held one hearing in both cases. The district court granted summary judgment in favor of St. Paul on the offset issue, stating:

In my view, in reviewing the contract, the contract intended that there not be [a] provision for separate recovery under the medpay section and the uninsured motorist section. I'm reading the contract as a whole. I certainly don't see it that way.

I can say with almost absolute certainty that this was the—what the parties envisioned. I certainly—and Ms. Fickbohm and Ms. Jarvis as a Class II insured are certainly not going to read the provisions precisely. But I think it's clear that what was intended under this contract was that there not be separate recoveries for medpay coverage when there is additional recovery for the uninsured motorist claim.

## DISCUSSION

{5} Plaintiffs raise a number of points as to why St. Paul should not be allowed to impose a medpay offset from their UM/UIM awards. They can be reduced to two basic arguments: (1) The offset is not permitted because the policy language is ambiguous, and (2) The offset would violate New Mexico's Uninsured Motorist Statute, case law, and public policy. Fickbohm raises the addi-

tional argument that St. Paul's waiver of subrogation on the medical payments prevented it from enforcing the offset.

{6} The arguments were preserved below and the parties correctly agree that a *de novo* standard of review should be applied. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether [Defendant] was entitled to [judgment] ... as a matter of law. We review these legal questions de novo." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (internal citation omitted).

### A. The Language of the Policies

 {7} We begin by examining the language in the policies to determine whether it is ambiguous regarding the offset in dispute. Plaintiffs rely on the principle that ambiguity in policy language concerning coverage is generally construed against the insurance company that drafted it. *See Lopez v. Found. Reserve Ins. Co.,* 98 N.M. 166, 168, 646 P.2d 1230, 1232 (1982). Thus, Plaintiffs contend that a finding of ambiguity will essentially end the analysis with them prevailing. "The question of whether an ambiguity exists [in an insurance policy] is a question of law to be decided by the court." *Richardson v. Farmers Ins. Co.,* 112 N.M. 73, 74, 811 P.2d 571, 572 (1991).

{8} The medpay section of each policy provides:

Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under any Bodily Injury Liability, Property Damage Liability, Uninsured Motorists Coverage and/or Underinsured Motorists Coverage provided by this policy.

{9} The UM/UIM Endorsement of each policy provides:

Any payment under this coverage will reduce any amount that person is entitled to recover under the Bodily Injury Liability Coverage/Property Damage Liability Coverage, Medical Payments Coverage or

Coverage For Damage To Your Auto of this policy.

These two provisions mirror each other and unambiguously express the intent to impose an offset between the two coverages.

■ {10} Plaintiffs argue that because the policies say the reverse (that UM/UIM reduces medpay) of what actually happened in these cases (medpay reducing UM/UIM) the language in the policy does not apply at all or at least is ambiguous. We do not agree. There is ambiguity when a contract is "reasonably and fairly susceptible of different constructions." *Levenson v. Mobley*, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). These policy provisions cannot be reasonably interpreted to mean anything other than that they are intended to prevent recovery for the *same* medical damages from both coverages. Given the normal course of personal injury claims, medical payments are almost always made before the UM/UIM award is finalized. Whether, as a matter of timing, previously paid medpay is deducted from the final UM/UIM award, or vice versa, it is clear the provisions are meant to prevent double recovery for the same damages. Based on the policy language, insureds could not reasonably expect such a double recovery.

■ {11} Plaintiffs also point out that the policies contain a provision providing that St. Paul "may elect to delay payments [under medpay] until the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under any ... Uninsured Motorists Coverage and/or Underinsured Motorists Coverage provided by this policy." In neither case did St. Paul choose to exercise this option. Plaintiffs argue this constitutes a waiver of the insurer's right to offset.

{12} The most obvious and reasonable reading of this provision is that it is permissive, not mandatory. St. Paul "**may** elect to delay payments ..." St. Paul could have delayed Plaintiffs' medpay payments until it secured a written agreement regarding offset. It did not choose to delay payments or require Plaintiffs to sign any additional paperwork. St. Paul's decision to forego a permissive procedure should not result in a finding that it waived the ability to exercise the offset provision. *Brown v. Greig*, 106 N.M. 202, 205, 740 P.2d 1186, 1189 (Ct.App. 1987) ("Waiver is the intentional relinquishment or abandonment of a known right, and the act of waiver may be evidenced by conduct as well as by express words.").

{13} Plaintiffs also argue that because their UM/UIM policies included a special New Mexico Endorsement which replaced the standard UM/UIM Endorsement, no offset should be available. Plaintiffs argue that the standard Endorsement clearly states the right to offset which St. Paul is now claiming and that by replacing the standard UM/UIM Endorsement St. Paul chose to forego its right to offset. Plaintiffs muse that St. Paul must have done this because it did not think it had such a right in New Mexico. We treat this argument as a facet of Plaintiffs' ambiguity theory.

{14} The standard UM/UIM Endorsement reads "[t]he Limit of Liability under this coverage shall be reduced by all sums: paid under the Bodily Injury Liability/Property Damage Liability Coverage or Medical Payments Coverage of this policy." The standard Endorsement can reasonably be read to give St. Paul a lesser right to offset than the New Mexico Endorsement does. Under the standard Endorsement only the "limit of liability" is reduced; not the amounts actually paid or payable as is the case with the New Mexico Endorsement. Thus, if the limit of liability is not reached (as in these cases) St. Paul has no right to offset under the standard Endorsement. For example, if a hypothetical insured has $100,000 in UM/UIM coverage and receives $5000 in medpay, her UM/UIM limits are reduced to $95,000 but there would be no right of offset at all if her total damages were $70,000. In that scenario, the insured would receive the $5000 plus the $70,0000. Under the New Mexico Endorsement, St. Paul has sought to ensure that it always has the right to offset, regardless of whether the limit of liability has been reached. Thus, the difference between the New Mexico Endorsement and the standard Endorsement does not support Plaintiffs' position.

### B. New Mexico Case Law on Offsets and the UIM Statute

{15} Plaintiffs make two basic public policy and statutory arguments: (1) that allowing an offset would sanction a new and unwarranted limitation on UM/UIM recovery; and (2) the offset is improper because medpay and UM/UIM are separate, enforceable contract rights, in that separate premiums were paid for each. St. Paul responds by emphasizing that because Plaintiffs received full compensation for their damages, the offset it requests does no damage to New Mexico's UM/UIM public policy objectives while positively serving the public policy against "double recovery." Because there is no New Mexico case law on point, both parties argue by analogy and implication.

■ {16} As a starting point, we agree with the general observation that UM/UIM policy provisions limiting an insured's recovery of damages have met with strong disfavor in New Mexico. One of the clearest statements of New Mexico's policy concerning limits on UM recovery is found in *Continental Insurance Co. v. Fahey*, 106 N.M. 603, 605, 747 P.2d 249, 251 (1987), *superseded by statute on other grounds as stated in Mountain States Mutual Casualty Co. v. Vigil*, 121 N.M. 812, 815, 918 P.2d 728, 731 (Ct.App.1996):

> As a general rule, uninsured motorist policy provisions that limit the insured's recovery of damages are void. Limitations on recovery under the uninsured motorist statute must accord with those set out in the statute. The only statutory conditions for entitlement to the benefits of uninsured motorist coverage are that: (1) the injured person be legally entitled to recover damages, and (2) the negligent driver be uninsured. (citation omitted).

{17} The policy at issue in *Fahey* sought to reduce UM/UIM recovery by amounts payable to the insured "'under any workmen's compensation law, disability benefits law, or similar law.'" *Id.* The Court held that this clause would unacceptably reduce Continental's liability below the minimum required by statute. *Id.* The Court in *Fahey* also rejected the insurance company's "double recovery" argument as "speculative." The

Court drew a distinction between proceedings intended to determine the full degree of the insured's damages and statutory remedies such as workmen's compensation. Stressing that "we have never declared a worker's compensation judgment to be the full and actual value of the worker's damages," the Court held it was simply improper to allow an offset against a UM/UIM payment which itself did not necessarily represent a full remedy. *Id.*

{18} Plaintiffs also rely on *Sloan v. Dairyland Insurance Co.*, 86 N.M. 65, 519 P.2d 301 (1974) and *Martinez v. Allstate Insurance Co.*, 1997–NMCA–100, 124 N.M. 36, 946 P.2d 240. In *Sloan*, the deceased was killed while riding as a passenger in a car insured by Dairyland with minimum UM/UIM coverage. As a passenger, she was a Class II insured. The deceased also had minimum UM/UIM coverage on her own auto. The wrongful death damages exceeded the combined limits of the two coverages. Dairyland argued that the Class II policy was the prime coverage and should be offset against its coverage under a clear and unambiguous "other insurance" provision in the Class I policy. Our Supreme Court held that the "other insurance" provision was not enforceable, at least to the extent of the insured's damages and the policy limits. The Court followed the "better reasoned line of cases" which refused to enforce policy provisions which tended to weaken the protections intended by legislatures as they developed and adopted uninsured motorist statutes. *Id.* at 67, 519 P.2d at 303. *See Sellers v. United States Fid. & Guar. Co.*, 185 So.2d 689 (Fla.1966); *Safeco Ins. Co. v. Jones*, 286 Ala. 606, 243 So.2d 736 (1970).

{19} In *Martinez*, we held that a "household exclusion" provision could not be enforced because "underinsured benefits for a Class I insured may be limited only by the conditions imposed by the statute: (1) the insured must have the legal right to recover damages, and (2) the negligent driver must be underinsured." 1997–NMCA–100, ¶ 18, 124 N.M. 36, 946 P.2d 240 (citing *Padilla v. Dairyland Ins. Co.*, 109 N.M. 555, 557, 787 P.2d 835, 837 (1990) (voiding an exclusion of

UM/UIM coverage for vehicles covered by the policy)).

{20} *Fahey, Sloan,* and *Martinez* aptly illustrate New Mexico's attitude toward limits on UM/UIM coverage. But they do not provide a complete answer to St. Paul's argument that New Mexico public policy is not offended by this offset when an insured is otherwise fully compensated for her damages. There is an important distinction between Plaintiffs' cases and the situation in *Fahey, Sloan,* and *Martinez.* We know the full value of the Plaintiffs' damages has been determined by arbitration and has been paid. There is no danger here that enforcing the offset will reduce UM/UIM coverage below the statutory minimum or result in less than full compensation consonant with policy limits.

{21} We do not retreat from New Mexico's policy favoring full compensation of injured parties. There is, however, the companion policy of discouraging recovery in excess of full compensation. *Schmick v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 216, 704 P.2d 1092 (1985) is perhaps the clearest statement of the policy. In *Schmick,* our Supreme Court held that under the statute, available underinsured coverage is to be calculated by offsetting the tortfeasor's liability coverage against the aggregate of the insured's underinsured coverage; not against the insured's total damages. *Id.* at 222–23, 704 P.2d at 1098–99. The Court conceded that the uninsured statute did not require or authorize offset of the tortfeasor's liability, yet it described the offset as "inherent in our statutory definition of underinsured motorist[s]." *Id.* at 223, 704 P.2d at 1099. The Court also noted that under either formulation of the offset, the "combined amounts the insured recovers . . . can never exceed the insured's total damages." *Id.* at 218 n. 1, 704 P.2d at 1094 n. 1.

{22} Plaintiffs' final public policy argument is premised on the fact that separate premiums were charged for the medpay and UIM coverages. Plaintiffs argue that separate premiums give rise to reasonable expectations of separate rights of recovery which the offset destroys. We note that medpay provisions are not subject to the same type of policy strictures as UM/UIM coverage. As a result, New Mexico will enforce unambiguous limits and exclusions on medpay coverage that would not be enforceable as to UM/UIM coverage. In *Sanchez v. Herrera,* 109 N.M. 155, 160, 783 P.2d 465, 470 (1989), for example, our Supreme Court enforced an unambiguous provision precluding stacking of medpay coverage even though separate premiums had been charged for each automobile. Recognizing the result would be different for UM/UIM coverage, the Court upheld the exclusion as a matter of contract construction "[b]ecause we are not faced with any countervailing legislative policy mandating a different interpretation." *Id.; see also Chavez v. State Farm Mut. Auto. Ins. Co.,* 87 N.M. 327, 329, 533 P.2d 100, 102 (1975) (stating that exclusion provisions in insurance contracts will be enforced so long as their meaning is clear and they do not conflict with statute). As *Herrera* and *Chavez* teach, the effect of multiple premiums can be limited if done clearly and if there is no statutory objection to the limitation. We have already determined that the offset provisions are unambiguous. Thus, the payment of separate premiums does not compel a ruling that medpay cannot be offset, as is the case for UM/UIM coverage by itself.

{23} Thus we hold that the offset imposed by St. Paul is enforceable in circumstances such as these cases where insureds are fully compensated for their damages.

{24} We emphasize, however, that our UM/UIM statute imposes an important and definite limit on the enforceability of this offset. In these cases, there is no statutory problem because Plaintiffs have been fully compensated. Where application of the offset would result in a limitation of UM/UIM coverage, the offset would not be enforceable. This can occur at the lower or upper end of coverage. Whenever insureds have UM/UIM coverage less than the amount of their damages, the offset cannot be enforced. As a concrete example, if Jarvis had only $50,000 of UM/UIM coverage, the offset would not be allowed. Or, if her awarded damages were $110,000 rather than her $80,000, the offset would not be allowed.

{25} St. Paul asserts that it, in fact, does not enforce the offset in such cases, though its reasons for not doing so are unclear. We emphasize that insurers may not enforce an offset of this kind when: (1) an insured is not fully compensated, (2) the offset would reduce any payment below the statutory UM/UIM minimum, or (3) the UM/UIM award makes clear that it does not include elements included in the medpay payments. *Cf. Chavez v. S.E.D. Labs.*, 2000–NMSC–034, ¶ 16, 129 N.M. 794, 14 P.3d 532 (holding that only duplicative UM payments for the same items of damages are subject to worker's compensation reimbursement requirement).

{26} As we have noted there are no New Mexico cases precisely on point. But, we do not write on a blank slate. The issue has been resolved by other jurisdictions. Of the authority cited to us by the parties, we believe the Washington cases are the better reasoned. *See Keenan v. Indus. Indem. Ins. Co.*, 108 Wash.2d 314, 738 P.2d 270 (1987) (en banc), *overruled on other grounds by Price v. Farmers Ins. Co.*, 133 Wash.2d 490, 946 P.2d 388, 393 (1997). In *Keenan*, the Washington Supreme Court addressed a similar offset clause for payments made under a no-fault clause commonly called "PIP" that included medical expense and income continuation benefits. The policy in *Keenan* provided for reimbursement of PIP payments if the insured recovered "from another." *Id.* at 272. The insured received $25,000 from the tortfeasor and proceeded to arbitration under her UIM coverage. Her UIM award was $44,478.28. The insurance company deducted the $25,000 paid by the tortfeasor and $9,999.90 PIP payments from the arbitration award. Emphasizing the fact that the insured was fully compensated, and that the setoff did not reduce UM coverage below policy or statutory limits, the Washington Court affirmed. We agree with the court's rationale in *Keenan. See also Ellison v. Cal. State Auto. Ass'n,* 106 Nev. 601, 797 P.2d 975 (1990) (per curiam) (allowing setoff of medpay payments in order to prevent double recovery of medical damages).

{27} Plaintiffs cite cases from other states refusing to enforce medpay setoff provisions.

*See Kuda v. Am. Family Mut. Ins. Co.,* 790 S.W.2d 464 (Mo.1990) (en banc) and *Tuggle v. Gov't Employees Ins. Co.,* 207 So.2d 674 (Fla. 1968), *superseded by statute on other grounds as stated in Stuyvesant Ins. Co. v. Johnson,* 307 So.2d 229, 231 (Fla.Dist.Ct. App.1975). These cases refused to enforce the setoff because of the danger posed to the purpose and effectiveness of UM/UIM coverage. *Tuggle* read the offset provision to "on its face" decrease the statutory minimum UM coverage. *Id.* at 675. Our holding allays these concerns entirely by limiting enforcement of the offset to cases where insureds are fully compensated. Under our more nuanced approach, an insured is allowed to collect on both coverages to the extent of their damages.

{28} The rest of the out-of-state cases cited by Plaintiffs can be similarly distinguished. *See Stephens v. Allied Mut. Ins. Co.,* 182 Neb. 562, 156 N.W.2d 133, 140 (1968) (holding provision in automobile liability policy void because it *reduces the minimum coverage of uninsured motorist protection prescribed and required by the law* ); *Bertolami v. Merchants Mut. Ins. Co.,* 120 N.H. 308, 414 A.2d 1281, 1283 (1980) (holding clause which allowed deduction of amount payable to insured under medical payment coverage from amount payable under uninsured motorist coverage, but not from amount payable under ordinary liability coverage, was void in that it *violated statute that guaranteed certain minimums for uninsured motorist coverage* ).

{29} We are similarly unpersuaded by Plaintiffs' contention that the offset should not be permitted because subrogation would have required St. Paul to pay its proportionate share of attorney fees and costs and thus it would have received less than the full $5000 it received via the offset if the tortfeasor was fully insured. This argument is based on a faulty premise—that what an insured should obtain from an insurer is controlled by what the insurer would obtain in subrogation. In contrast, the correct analysis is as follows: Plaintiffs were insured, and they received their full measure of damages from St. Paul (and the tortfeasor's insurance in the case of Fickbohm). That is what they paid

for and that is what they received. They have no right to anything else, regardless of what might have been the case if St. Paul would have had to exercise subrogation rights. Plaintiffs' rights to insurance recovery are independent of what the insurance company is entitled to recover in other proceedings and in other contexts.

## C. Fickbohm Waiver Issue

{30} Fickbohm raises one additional argument, arguing that St. Paul waived its right to offset medpay against UIM when it, by letter, waived its right of subrogation against the tortfeasor. We believe this waiver letter only applies to St. Paul's right of subrogation against the tortfeasor and should not be read to encompass a waiver of the contractual offset provision between the medpay and UIM coverage. The same issue was resolved in *Safeco Insurance Co. v. Woodley*, 102 Wash.App. 384, 8 P.3d 304 (2000). There the court found that the waiver letter simply confirmed the insurance company's intent to waive its PIP subrogation lien as a result of the tortfeasors' payment of their full liability limits, but did not address the insurance company's right to reduce the UIM award. The court did not think the letter constituted evidence that *Safeco* intended to waive its right to take the UIM offsets, but instead found the letter to be "consistent with Safeco's attempt to recover the PIP payments through a UIM offset, rather than from the liability settlement." *Id.* at 308–309.

## D. St. Paul's Responsibility for Attorney's Fees and Costs

{31} Plaintiffs argue that they should be entitled to attorney fees and costs if they prevail. However, since we have ruled against them, their claim fails.

## CONCLUSION

{32} Summary judgment in favor of St. Paul in each case is affirmed.

{33} IT IS SO ORDERED.

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.