This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                       **Nos. 28,386 and 28,962**
                                                              **(consolidated)**

**DAVID A. GRIEGO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**David W. Bonem, District Judge Pro Tempore**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

In this consolidated appeal, Defendant David Griego appeals his conviction of second degree murder and his sentencing as a habitual offender. He was convicted as an accessory for his involvement in the murder of ten-year-old Carlos Perez (Victim). Defendant primarily claims that he was denied a fair trial. Specifically, he argues that the district court made an improper ruling regarding venue; his trial should have been severed from that of Co-Defendant Demetrio Salas; there were improper rulings by the district court during jury selection; a mistrial was warranted after a State's witness made an inappropriate comment to a juror; improper evidentiary rulings were made by the district court; there was prosecutorial misconduct which warranted a mistrial; and cumulative error warranted a mistrial. He also argues that he was improperly sentenced as a habitual offender because the State failed to meet its burden of proof. After considering each of Defendant's arguments, we affirm. We will discuss the facts of this case in greater detail as they apply to each issue raised in the appeal. The following is a summary of events.

Defendant and Co-Defendant were tried together for Victim's murder. Co-Defendant was convicted of first degree murder. He appealed directly to our Supreme Court. Our Supreme Court has issued an opinion in Co-Defendant's appeal. That opinion is determinative of two of the issues Defendant raises in the present appeal. Witness testimony indicates that Defendant and Co-Defendant went together to

Victim's home, where Co-Defendant fired a gun nine times into Victim's bedroom as he slept. Victim died from a bullet wound to his temple. The intended target was Victim's older brother who attended high school with Co-Defendant's younger brother.

**The State's Second Motion to Reconsider**

Defendant argues that the district court abused its discretion by granting the State's second motion to reconsider a change of venue from Curry County, New Mexico, which is within the Ninth Judicial District. The result of this ruling was that the trial was held within the Ninth Judicial District in Roosevelt County. Co-Defendant raised this same issue in his appeal to the Supreme Court. *State v. Salas*, 2010-NMSC-028, ¶ 1, 148 N.M. 313, 236 P.3d 32. As this matter has already been decided, we hereby decline to examine it any further. *See id.* ¶¶ 7-19 (concluding that the district court made a proper ruling regarding venue); *Martinez v. Allstate Ins. Co.*, 1997-NMCA-100, ¶ 15, 124 N.M. 36, 946 P.2d 240 (recognizing as a "settled principle that this Court does not overrule Supreme Court case law").

**Defendant's Motion to Sever**

Defendant argues that the district court abused its discretion by denying his request to sever his trial from that of Co-Defendant. Among his reasons for requesting severance were that (1) testimony relating to the charge of intimidation of a witness

3

would be prejudicial to Defendant, because only Co-Defendant faced that charge; (2) Defendant and Co-Defendant had antagonistic defenses; (3) there was insufficient evidence of a common plan or scheme; and (4) the charges against Defendant and Co-Defendant were so similar that separating them would be difficult for the jury.

"Our standard of review applicable to severance issues is exceedingly narrow. The essence of our review is to determine whether the joint trial resulted in an appreciable risk that the jury convicted for illegitimate reasons." *State v. Dominguez*, 115 N.M. 445, 453, 853 P.2d 147, 155 (Ct. App. 1993) (citation omitted). "Severance is a matter within the sound discretion of the trial court and will not be reversed on appeal absent a showing of an abuse of discretion." *State v. Peters*, 1997-NMCA-084, ¶ 10, 123 N.M. 667, 944 P.2d 896.

Under Rule 5-203(B)(3) NMRA, even where a conspiracy is not charged and not all the defendants are charged in each count, two or more defendants may be joined where they "were part of a common scheme or plan; or . . . were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of others."

A majority of the evidence in this case points to a collaboration between Defendant and Co-Defendant in the plan that resulted in Victim's murder. The

4

testimony from various witnesses, when pieced together, points to the fact that Defendant and Co-Defendant were together before, during, and after the murder.

Melissa Sanchez (Melissa) testified that on the night of the crime Defendant joined Co-Defendant, Melissa, and Orlando Salas (Orlando) in the Salas family suburban. Defendant, dressed in dark clothing, joined the group shortly after midnight. The four drove together to the Gatewood Apartments, where Victim lived, and Melissa indicated which of the windows she thought belonged to Victim's family's apartment. The group then drove two blocks from the apartment complex to Eric Gutierrez's house. Eric Gutierrez (Eric) testified that he had known Co-Defendant "probably . . . all [his] life almost, . . . . [They] grew up in the same neighborhood." Melissa testified that when the group got to Eric's house, Co-Defendant instructed Orlando and Melissa to get out of the suburban, explaining that he (Co-Defendant) and Defendant had to "go do some business," that they had to "go on a mission." Melissa and Orlando got out of the vehicle and knocked on Eric's window. Eric let them in through the front door. According to Melissa's testimony, Defendant and Co-Defendant were the only two people in the suburban when they left Melissa and Orlando at Eric's house.

Victim's neighbor (Neighbor) heard a car horn and looked out her window to see what was later identified as the Salas family suburban driving slowly down her

street. Five or ten minutes later, the suburban appeared on Neighbor's street again and was parked in front of her bedroom window under a street light. Neighbor saw "somebody in the front passenger door," who was wearing a dark hat and a dark shirt. The passenger door was open, and the individual had one leg hanging out of the vehicle. Neighbor could not see how many people were in the vehicle. Neighbor then heard "banging noises" and stopped looking out the window. She ran to check on her children. After checking on her children, she looked out a window and the vehicle was gone.

Ashley Garcia (Ashley) testified that she was near Victim's apartment complex when the crime occurred, that she saw the suburban parked, saw two doors open, and saw two people get out. The two individuals joined and shook hands with two other people that had been with Ashley who were also involved in Victim's murder, but who were not tried in the instant case.

Melissa testified that she and Orlando waited at Eric's house for Defendant and Co-Defendant to return, which they did, about five minutes later. When Eric opened the door, Defendant and Co-Defendant ran inside and Co-Defendant said, "I just went in and blasted nine rounds at that sewer rat's house." Melissa testified that both Defendant and Co-Defendant ran inside, and while it appeared that Co-Defendant was

"hyped up" with adrenalin, she did not pay attention to Defendant after he ran inside.

Eric retrieved his police scanner from a backroom and the group, which included Orlando, Melissa, Eric, Defendant, and Co-Defendant, listened as the police communicated that there was an eleven-year-old with a gunshot wound to the temple, heart rate dropping. The group remained at Eric's house, while Co-Defendant cleaned his gun with pickle juice and hid the suburban in the garage. The group dispersed at approximately 3:30 a.m.

Based on Defendant's involvement in or presence during these events, we determine that there is sufficient evidence of a common plan such that the district court properly denied a motion to sever. This holding is in line with our holding in *Dominguez*. *See* 115 N.M. at 453, 853 P.2d at 155. There, this Court upheld the district court's denial of a motion to sever where both defendants were part of a group of persons kicking and hitting the victim while he was being stabbed, and the basis of the defendants' culpability was that they aided and abetted the individual who did the stabbing. *Id.* Here, the evidence suggests that Defendant played a supportive role in the murder. He uninterruptedly accompanied Co-Defendant throughout the approximated three-hour time span, during which the crime occurred, and was therefore an accessory to the murder. *See State v. Ortega*, 77 N.M. 7, 17, 419 P.2d

219, 227 (1966) (stating that to be guilty as an accessory, one must share the principal's intent and there must be "a community of purpose and partnership in the unlawful undertaking"); *State v. Riley*, 82 N.M. 298, 299, 480 P.2d 693, 694 (Ct. App. 1971) (affirming accessory conviction for burglary when the principal completed the crime, and the accessory knew, was present, and participated by assisting in carrying property away).

Having determined that there was sufficient evidence of a common plan to support a joint trial, we turn to Defendant's remaining three severance arguments. First, Defendant claims that his defense and that of Co-Defendant were antagonistic.

> While there are situations in which inconsistent defenses may support a motion for severance, the doctrine is a limited one. . . . [T]he governing standard requires the moving defendant to show that the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. Application of this standard . . . requires that the accounts of [the] co-defendants be not merely divergent from one another but indeed so contradictory as to raise an appreciable danger that the jury would convict solely on the basis of the inconsistency.

*State v. Segotta*, 100 N.M. 18, 24-25, 665 P.2d 280, 286-87 (Ct. App. 1983) (internal quotation marks and citations omitted), *rev'd in part on other grounds by* 100 N.M. 498, 672 P.2d 1129 (1983).

Notwithstanding the fact that Defendant fails to provide an explanation of how he views the defenses as antagonistic, a review of the record does not support such a

holding. Under the facts of this case, neither Defendant nor Co-Defendant attempted to implicate the other as the guilty party. In fact, both of their defenses centered on their respective lack of presence during or participation in the murder.

Second, we examine Defendant's argument that charges against him and Co-Defendant were so similar that separating them would be difficult for the jury. The jury's verdict in this case contradicts the validity of Defendant's argument. Defendant was acquitted of first degree murder, attempted first degree murder, shooting at a dwelling, illegal possession of a firearm, and tampering with evidence. These jury verdicts indicate that the jury was able to separate the evidence pertaining to Defendant and Co-Defendant respectively and was able to apply it accordingly. *See Dominguez*, 115 N.M. at 453, 853 P.2d at 155 (affirming district court's denial of motion to sever where it was "apparent . . . that the jury was able to follow the evidence and apply it to each individual count and to each defendant").

Nor are we persuaded by Defendant's third argument in support of severance. Defendant argues that testimony regarding intimidation of a witness, a charge faced only by Co-Defendant was prejudicial to Defendant, therefore requiring separate trials. We disagree.

As we have already noted, Defendant was acquitted on all counts, with the exception of second degree murder. There was ample and legitimate evidence of

9

Defendant's involvement in Victim's murder to support this conviction. Furthermore, none of the testimony at issue referred to Defendant. "On review of [a denial of severance,] we must decide whether . . . there [was] an appreciable risk that the jury convicted for illegitimate reasons." *State v. Montoya*, 114 N.M. 221, 224, 836 P.2d 667, 670 (Ct. App. 1992). "[The] inquiry necessarily involves [the] consideration of the degree of prejudice . . . and of the strength of the legitimate evidence arrayed against [the] defendant." *Id.* "A trial court has discretion in deciding whether . . . to sever a case." *Id.* Given the legitimate evidence against Defendant, the denial of severance was not an abuse of discretion.

**Jury Selection Issues**

Defendant argues that the district court erroneously denied challenges for cause by Defendant against five specific jurors. In his briefing to this Court, Defendant provides an explanation of the "cause" behind each challenge, yet he fails to provide any authority beyond the standard of review in support of his argument. Hence, we will not consider this issue as part of the appeal. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellate court will not consider an issue if no supporting authority is cited).

As to Defendant's remaining jury selection issues, they will not be examined as part of this appeal because they were decided in *Salas*, 2010-NMSC-028, ¶¶ 20-38.

There, our Supreme Court determined that (1) Defendant and Co-Defendant exercised their peremptory challenges jointly, *id.* ¶ 20 n.2; (2) the district court properly affirmed the State's *Batson* challenge, *id.* ¶ 36; and (3) the district court properly rejected Defendants' *Batson* challenge. *Id.* ¶ 38; *see Martinez*, 1997-NMCA-100, ¶ 15 (recognizing as a "settled principle that this Court does not overrule Supreme Court case law").

**Inappropriate Witness Comment**

Defendant argues on appeal that an inappropriate comment made by a State's witness to a juror warranted a mistrial. On the morning of the third day of trial, two jurors and three witnesses had an encounter at the elevator. Either directly to or at least in the presence of the jurors, one of the witnesses said, "hang them boys." The witness, Max Sena (Max), according to the State's answer brief, was expressing his dissatisfaction with the fact that he had been charged with tampering with evidence. Max testified that he had been convicted on this charge based on his involvement with the murder weapon. Max's comment in the presence of the jurors was made prior to his testimony.

The jurors immediately notified the court about the incident; however they had already related this experience to some of the other jurors. The court decided to question the jurors individually to learn what they had heard and to determine whether

11

they could still be fair and impartial, and each of them stated they could. Defendant moved for a mistrial as a result of this incident and because the district attorneys office had determined that three of the State's witnesses were discussing the case, also claimed a violation of Rule 11-615 NMRA. The district court denied the motion. Defendant renews these claims on appeal, arguing that the district court erred by not granting a mistrial.

Rule 11-615 reads in pertinent part, "[a]t the request of a party[,] the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." "The purpose of the rule excluding witnesses is to give the adverse party an opportunity . . . to expose inconsistencies in their testimony[;] and . . . to prevent the possibility of one witness shaping his testimony to match that given by other witnesses at the trial[.]" *State v. Ortiz*, 88 N.M. 370, 377, 540 P.2d 850, 857 (Ct. App. 1975) (internal quotation marks and citations omitted).

Defendant fails to provide any explanation or authority in support of his Rule 11-615 claim. We do not see any basis for relief under this rule, and we therefore move directly to an examination of the improper communication between the witness and the jurors. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330 (stating

that an appellate court will not consider an issue if no authority is cited in support of the issue and will assume no such authority exists).

We review for abuse of discretion a denial of a motion for mistrial. *State v. Johnson*, 2010-NMSC-016, ¶ 49, 148 N.M. 50, 229 P.3d 523. In cases involving extraneous juror communications, the presumption of prejudice is not automatic. *Kilgore v. Fuji Heavy Indus. Ltd.*, 2010-NMSC-040, ¶¶ 18-19, 148 N.M. 561, 240 P.3d 648. Where there is evidence of improper juror communications, "the issue . . . is whether there is a reasonable probability or a likelihood that the extrinsic communications or conduct would have an effect upon the verdict or upon a typical juror." *Prudencio v. Gonzales*, 104 N.M. 788, 790, 727 P.2d 553, 555 (Ct. App. 1986) (internal quotation marks and citation omitted). "[T]he ultimate issue in all jury tampering, misconduct, or bias cases is how the impropriety in question would have affected a hypothetical average jury." *Kilgore*, 2010-NMSC-040, ¶ 21 (internal quotation marks and citation omitted).

In *Kilgore*, our Supreme Court recognized that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id.* ¶ 16 (internal quotation marks and citation omitted). There, the Court explained that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id.* (internal quotation marks and citation

13

omitted). Rather, the district court is in a position to implement "[t]he safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge" and by doing so, to determine the effect of potentially compromising juror contact. *Id.* (internal quotation marks and citation omitted). Throughout these proceedings, the burden of proving the reasonable probability that the extraneous information affected the jury rests with Defendant. *See id.* ¶ 22.

Here, upon learning of the extraneous communication, the district court acted within the bounds of its discretion by interviewing each juror individually. *See State v. Gallegos*, 2009-NMSC-017, ¶ 29, 146 N.M. 88, 206 P.3d 993 (recognizing "that trial courts have considerable discretion and a variety of remedies to address allegations of juror bias, including individual voir dire"). The district court asked the jurors what they had heard and whether it would affect their ability to be fair and impartial. All jurors replied that they could be fair and impartial notwithstanding what they had heard and in some cases, did not hear. And, before they were excused from the interview, the court asked them to refrain from discussing what had been discussed in chambers. Based on the foregoing, we determine that the district court's actions were appropriate as a method of learning whether the jury was affected by the inappropriate witness comment. As the district court took this measure and found that

the jury was not affected, it was then for Defendant to show that the jury was, in fact, affected by the comment. In this case, Defendant made no such showing.

After the juror interviews, the district court, both defense attorneys, and the attorney for the State further discussed the situation in chambers. Defense counsel hypothesized that a problem could arise for the jurors who heard the comment when the witness who made the comment takes the stand. In response to this, the court asked whether that juror should be released. To which counsel for Co-Defendant responded in the negative. Defendant did not further attempt to make a showing to the district court, nor does he do so on appeal.

On appeal, Defendant simply asserts that "[t]he communication . . . substantially threatened the impartiality of the jury." However, we are unpersuaded by this assertion given the fact that the jurors themselves said otherwise. We therefore determine that the district court did not abuse its discretion by denying Defendant's motion for a mistrial.

**Inadmissible Testimony Issues**

Defendant argues that the district court erred by refusing to give a limiting instruction with regard to the testimony of four witnesses, Detective Whitney, Detective Pitcock, Isidoro Salas, and Detective Aguilar. Defendant claims that the absence of a limiting instruction "directly impacted the jury negatively against him,

15

leading to his conviction." His sole authority in support of this assertion is the limiting instruction at issue, UJI 14-5007 NMRA.

We review evidentiary issues for an abuse of discretion. *State v. Wildgrube*, 2003-NMCA-108, ¶ 8, 134 N.M 262, 75 P.3d 862. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Apodaca*, 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (internal quotation marks and citations omitted).

UJI 14-5007 states:

> Evidence concerning [description of evidence] has been admitted against [name of defendant] but not admitted against [name of defendant].
>
> []At the time this evidence was admitted, you were instructed that it could not be considered by you against [name of defendant].[]
>
> You are []again[] instructed that you must not consider such evidence against [name of defendant].
>
> Your verdict as to each defendant must be reached as if he were being tried separately.

The use notes accompanying this instruction state that it must be issued upon request where the evidence in question is admitted as to only one party.

16

As the appellant, Defendant bears the burden of establishing how the district court abused its discretion. *State v. Ortiz,* 2009-NMCA-092, ¶ 35 146 N.M. 873, 215 P.3d 811. On appeal, Defendant states that he objected to these four witnesses "on the basis of relevance and on the basis the testimony prejudiced him." He states that each objection was accompanied by a request for a limiting instruction, all of which were denied. Defendant does not provide citation to any case law or Rules of Evidence in support of his argument. The State refutes Defendant's argument by providing an explanation of how the evidence in question was relevant to its case against both Co-Defendant and Defendant. And Defendant, though given an opportunity to respond to the State's argument in his reply brief, chose not to.

Defendant's mere citation to the limiting instruction is insufficient to persuade us that the court erred in admitting the testimony of Detective Whitney, Detective Pitcock, or Isidoro Salas, against Defendant. As Defendant provides no authority on this point, we will not attempt to research it for him, and we will not consider his argument. *See State v. Eric K.*, 2010-NMCA-040, ¶ 16, 148 N.M. 469, 237 P.3d 771. Additionally, we cannot hold that the district court abused its discretion by not giving a limiting instruction because there was no evidence admitted at trial against Co-Defendant that was not admitted against Defendant.

With regard to the testimony of Detective Aguilar, the record indicates that Defendant did not request that the district court give a limiting instruction. We determine therefore that this argument was not preserved. *See Vill. of Angel Fire v. Bd. of Cnty. Comm'rs of Colfax Cnty.*, 2010-NMCA-038, ¶ 15, 148 N.M. 804, 242 P.3d 371 (stating that "[i]n order to properly preserve an issue, it must appear that the party fairly invoked a ruling of the district court on the same grounds argued in the appellate court" and "[w]e will not review arguments that were not preserved in the district court" (alterations omitted) (internal quotation marks and citation omitted)).

**Exclusion of a Statement Made by Edward Salas to Ashley Garcia**

Defendant argues on appeal that the district court abused its discretion by refusing to admit a statement made by Edward Salas (Edward) to Ashley, a statement that Defendant characterizes as a statement against penal interest. Defendant calls for reversal and a new trial based on the district court's ruling that the statement lacked circumstantial guarantees of trustworthiness.

Defendant sought to cross-examine Ashley about a statement she made to Detective Aguilar following the shooting. During her interview with Detective Aguilar, Ashley related the details of a conversation she had with Co-Defendant's brother, Edward, following the shooting. The interview was recorded and transcribed, and portions were read to the district court outside the presence of the jury for the

18

purpose of an evidentiary ruling. Part of the transcript that was read by the prosecution stated: "I guess he explained to me that he . . . tried to shoot an older brother but shot the wrong boy." The transcript further stated that "I'd asked her about that when he says he explained to me–that he tried to shoot an older boy, and asked her if he was. That's when she explained to me that he–that Edward was indicating [']he['] was [Co-Defendant]." When reading the transcript proved confusing, the district court allowed Defendant to make an offer of proof by bringing Ashley in and questioning her about the statement she made. In an attempt to glean what she thought Edward meant when Edward said "I wasn't gonna shoot but I got scared," defense counsel asked her "did he tell you . . . something that made you think that when he was saying [']I['] he was referring to [Co-Defendant]?" Ashley testified that she did not know. Based on the lack of clarity as to whether Edward was admitting to shooting Victim or whether he was referring to his brother Demetrio, Co-Defendant, the court excluded the statement finding that it lacked "the circumstantial guarantees of trustworthiness necessary for admission of the statement against interest."

We review the district court's evidentiary rulings for an abuse of discretion. *State v. Johnson*, 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983). Rule 11-804 NMRA covers hearsay exceptions where the declarant is unavailable. In pertinent

19

part, Rule 11-804(B)(3) allows a statement against interest to be admitted provided that "corroborating circumstances clearly indicate the trustworthiness of the statement." In determining whether a statement contains circumstantial guarantees of trustworthiness, district courts should consider, among other things, "[a]mbiguity–the danger that the meaning intended by the declarant will be misinterpreted . . . [or] [f]aulty memory–the danger that the declarant simply forgets key material[.]" *State v. Coffin*, 1999-NMSC-038, ¶ 40, 128 N.M. 192, 991 P.2d 477.

Here, it appears that there was danger of both ambiguity and faulty memory. Ashley stated to the district court that she did not know whether Edward admitted to being the shooter, or whether Edward had told her that Demetrio was the shooter, indicating faulty memory. Moreover, neither the district court, the attorneys, nor this Court's reading of the transcribed interview served to clarify the ambiguity of Ashley's meaning during the interview. Thus, we hold that the district court made the proper ruling under the circumstances.

**Prosecutorial Misconduct Claim**

At trial, the State asked Co-Defendant whether he had been tested for gunshot residue. Before the State asked this question, the parties discussed the issue at a bench conference. The court ruled that the State was permitted to elicit testimony to the

effect that the gunshot residue tests had been taken, while making it clear that, because of the nature of the test, results could not be obtained.

When the State asked Co-Defendant whether he had been tested for gunshot residue, his counsel objected to the question and requested a mistrial. The district court denied the request for a mistrial. In order to avoid any confusion on the matter, the district court read to the jury the stipulation that the gunshot residue test bore no results and gave a limiting instruction. On appeal, Defendant claims that the act of asking Co-Defendant about the gunshot residue test constituted prosecutorial misconduct. The State claims there was no misconduct because the State followed the procedure that had been discussed and agreed to at the bench conference.

We review the denial of a motion for mistrial based on prosecutorial misconduct for an abuse of discretion. *See State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. The district court abuses its discretion in denying a motion for mistrial "when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983). "The trial court has broad discretion in controlling the conduct and remedying the errors of counsel during trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807. We note that "the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors." *Id.* And "[o]nly in

21

the most exceptional circumstances should [the appellate court], with the limited perspective of a written record, determine that all the safeguards at the trial level have failed. Only in such circumstances should [this Court] reverse the verdict of a jury and [a] judgment of [the] trial court." *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348.

Under the circumstances of this case, we need not decide whether the State's question constituted misconduct because the curative measures taken by the district court were sufficient to cure any such misconduct. *Cf. Gonzales*, 2000-NMSC-028, ¶ 37 ("The overwhelming New Mexico case law states that the prompt sustaining of the objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony." (internal quotation marks and citation omitted)).

**Admission of 911 Recording**

Defendant argues that the district court erred in admitting the recorded 911 call made by Victim's mother after the shooting. Defendant claims that the recording had no probative value, that any relevant information contained in the recording was presented by witnesses, and that the recording was more prejudicial than probative, serving only to inflame the jury.

We review the admission of evidence for abuse of discretion. *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. The district court has "great

22

discretion in balancing the prejudicial impact of [evidence] against its probative value." *State v. Garcia*, 2005-NMCA-042, ¶ 50, 137 N.M. 315, 110 P.3d 531 (internal quotation marks and citation omitted). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11-401 NMRA. Even where evidence has a potentially prejudicial effect, it will be admitted if it helps to clarify, corroborate, or illustrate the testimony of witnesses. *See State v. Blakley*, 90 N.M. 744, 748, 568 P.2d 270, 274 (Ct. App. 1977) (determining that there had been no abuse of discretion where photographs of the victim's body and the defendant's vehicle were admitted into evidence in vehicular homicide prosecution).

We are not convinced by Defendant's argument that the district court abused its discretion by allowing the 911 tape to be played. While Defendant argues that the recording had no probative value, the contents of the recording corroborated the testimony of other witnesses, including that of Victim's sister, as the recording contains Victim's mother stating that her daughter saw someone outside the window in a dark shirt.

Further, as the State explains, the recording was played as an alternative to having Victim's mother testify in her "obviously distraught state." The district court

admitted the tape having determined that it was relevant and apparently agreeing with the State's position that playing the recording would be "significantly less prejudicial" than having Victim's mother testify.

Moreover, Defendant does not cite any analogous authority to support his argument. Defendant relies solely on *Garcia*, 2005-NMCA-042, ¶ 50, in which the defendant lost on his claim that photographs of the victim that were taken before and after death were more prejudicial than probative. *Id.* ¶ 51. There, this Court stated, "[i]t is well established that photographs may properly be admitted for such purposes [as showing the nature of the injury, explaining the basis of the forensic pathologist's opinion, and illustrating the pathologist's testimony], even if they are gruesome." *Id.* ¶ 50.

In instances of both gruesome photographs and cries of a distraught mother making a 911 call, one can reasonably expect the jurors to have a visceral reaction to what they have seen or heard. In *Garcia*, as in the instant case, the district court was faced with the task of balancing the potential prejudice of such evidence against the need to present for the jury a complete account of what occurred that lead to the criminal charges. *Id.* ¶¶ 50-51. We determine here, as in *Garcia*, that the district court did not abuse its discretion.

**Sufficiency of the Evidence**

Defendant argues that the evidence presented at trial was insufficient to support his conviction. He bases his argument largely on the fact that he "did not say or do anything at all except to be present" and that mere presence without mental approbation is insufficient to support a conviction. He further argues that his acquittal of the "underlying act," shooting at a dwelling, supports his claim that the evidence against him did not support his conviction.

In reviewing the sufficiency of the evidence, an appellate court "does not evaluate the evidence to determine whether some [hypotheses] could be designed which is consistent with a finding of innocence." *State v. Sutphin*, 107 N.M. 126, 130-31, 753 P.2d 1314, 1318-19 (1988). Rather "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

Under accomplice theory of murder, a defendant is not required to participate in the actual killing. *Apodaca*, 118 N.M. at 767, 887 P.2d at 761; *see State v. Lucero*, 63 N.M. 80, 82, 313 P.2d 1052, 1053 (1957) (holding that the defendant was guilty as a principal where he was the driver of the getaway car, kept the motor running, and watched as the victim was robbed and beaten); *see also State v. Wilson*, 39 N.M. 284, 288, 46 P.2d 57, 59 (1935) (stating that "[a] person being aware of the malice or

criminal intent entertained by a person discharging a deadly firearm at another with fatal results, . . . and aids and abets in the commission of such an offense, is subject to the same punishment as the person who fires the effective shot").

We determine that there was ample evidence from which a reasonable jury could have found Defendant guilty as an accessory to Victim's murder. Evidence proved that Defendant left his home in dark clothing the night of the murder and joined Co-Defendant and others, and that the group drove around until they found Victim's family home. Evidence further indicated that Defendant then accompanied Co-Defendant on "a mission" to kill Victim's brother; that when Defendant and Co-Defendant arrived at the Victim's apartment complex they both got out of the vehicle and greeted two other individuals involved in the murder; and that Defendant either drove or was a passenger in the Salas family suburban as it drove to and left from the scene of the crime; that when Defendant and Co-Defendant returned from their "mission" they both ran into Eric Gutierrez's house and Co-Defendant exclaimed, "I just . . . blasted nine rounds at that sewer rat's house." While Defendant argues that witnesses did not hear him say anything, the jury was entitled to infer that Defendant and Co-Defendant discussed a plan once they were alone. This evidence suggests more than Defendant's mere presence. It indicates that, at the least, he played a supporting role in the murder.

Though it appears undisputed that Defendant did not do the actual shooting, this was not a requirement of the crime as charged. The guilty verdict in this case required that the State prove beyond a reasonable doubt that (1) Victim was killed and Defendant helped, encouraged, or caused that death; (2) that Defendant intended that the crime be committed; (3) Defendant knew his acts created a strong probability of death or great bodily harm to Victim or another; and (4) this happened in New Mexico on or about September 15, 2005. *See* UJI 14-2822 NMRA; UJI 14-210 NMRA. Based on the foregoing analysis, we determine that there was sufficient evidence to support Defendant's conviction.

**Cumulative Effect of Trial Errors**

Defendant argues that the cumulative effect of the alleged errors was so prejudicial that he was denied a fair trial. We do not agree. "The doctrine of cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993) (internal quotation marks and citation omitted). "[I]n New Mexico the doctrine of cumulative error is to be strictly applied. The doctrine cannot be invoked if no irregularities occurred, or if the record as a whole demonstrates that a defendant

27

received a fair trial[.]" *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984) (citations omitted).

Our review of the record as a whole indicates that Defendant received a fair trial. Because we have determined that there was no error, "we further conclude that there was no cumulative error." *State v. Casillas*, 2009-NMCA-034, ¶ 51, 145 N.M. 783, 205 P.3d 830.

**Habitual Offender Sentencing**

Defendant argues that the State failed to prove that less than ten years had passed between the completion of his sentence in CR-95-12178 and his conviction in the instant case. He further argues that the State failed in its burden of proving that he is the same person indicated in the prior convictions. Thus, he argues, his sentence should not have been enhanced under the habitual offender statute.

The prosecution has the burden of proof in habitual offender sentencing proceedings. *See State v. Elliott*, 2001-NMCA-108, ¶ 35, 131 N.M 390, 37 P.3d 107. The standard of proof for the State is a preponderance of the evidence. *State v. Smith*, 2000-NMSC-005, ¶ 1, 128 N.M. 588, 995 P.2d 1030. We use a substantial evidence standard of review when determining the sufficiency of the evidence. *State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170. And when reviewing

for substantial evidence, we give deference to the findings of the district court. *State v. Clements*, 2009-NMCA-085, ¶ 28, 146 N.M. 745, 215 P.3d 54.

Under the New Mexico habitual offender statute, NMSA 1978, § 31-18-17 (2003), three elements must be proved before a defendant's sentence is enhanced due to status as a  habitual offender:  "(1) [the] defendant must be the same person, (2) convicted of the prior felony, and (3) less than ten years have passed since the defendant completed serving his or her sentence, probation or parole for the conviction." *State v. Simmons*, 2006-NMSC-044, ¶ 8, 140 N.M. 311, 142 P.3d 899.

With regard to Defendant's first claim, that the State failed to prove that less than ten years had passed between his conviction in the present case and the completion of his sentence in CR-95-12178, we determine that the State met its burden of proof.  The State presented a certified copy of the judgment, sentence, and order suspending sentence to the district court.  The document is dated April 18, 1996, and sentences Defendant to three years of probation.  Thus, his probation was scheduled to end in April 1999.  Defendant's conviction in the present case occurred on October 4, 2007, one year and six months ahead of the ten-year limit.

To the extent that Defendant argues that the State must present a certificate of completion from the corrections department, we are not persuaded.  In making this argument Defendant relies on our Supreme Court's holding in *Simmons*, 2006-NMSC-

29

044. There, the Supreme Court explained that while the prosecution has the burden of making a prima facie case that not more than ten years has passed between felony convictions for the purpose of habitual offender proceedings, "the burden . . . is not onerous." *Id.* ¶ 14. The *Simmons* Court elaborated on this point by explaining various methods of proving the dates of the conviction, the charge and the jurisdiction, specifically mentioning the availability of "certificate[s] of completion," which are issued by the corrections department at the end of a probation or parole term. *Id. Simmons* does not require that the State present this certificate at sentencing, and Defendant has presented no authority to suggest the existence of such a requirement.

With regard to Defendant's second claim, that the State failed to prove Defendant's identity, we determine that the State did, in fact meet its burden of proof. During sentencing the State provided the district court with Defendant's PEN pack, which included Defendant's fingerprints, social security number, date of birth, and photographs from various admissions to the corrections department. The State pointed to the fact that documents generated by Defendant's sixty-day diagnostic evaluation associated with this case reflected the same date of birth and social security number, as well as Defendant's admission that he had served two prison terms. The State further directed the district court's attention to the fact that each of the photographs reflected Defendant's inmate number, which remained the same in this

case and which was also listed on Defendant's fingerprint cards from prior cases. Based on the State's evidence of identity, the district court held that Defendant's identity had been established by a preponderance of the evidence. At this point, the burden shifted to Defendant. *See id.* ¶ 13 (stating that "[o]nce the [prosecution] presents a prima facie case showing identity . . ., the burden to present proof of invalidity will shift to the defendant, and he will be required to produce evidence in support of his defense").

Defendant did not present to the district court, nor does he present on appeal, any evidence to contradict his identity as the same individual who committed the prior felonies. We agree with the district court that Defendant's identity was shown by a preponderance of the evidence, and Defendant has not persuaded us otherwise.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction of second degree murder and his sentencing as a habitual offender.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

31

_____

**JAMES J. WECHSLER, Judge**


_____

**MICHAEL E. VIGIL, Judge**